

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2007

# USA v. Bailey

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4356

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Bailey" (2007). *2007 Decisions.* Paper 1457.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1457

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-4356

———

UNITED STATES OF AMERICA

v.

KAMAU A. BAILEY,
Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 04-cr-00024)
District Judge: Honorable Thomas M. Hardiman

———

Submitted Under Third Circuit LAR 34.1(a)
March 9, 2007

Before: SLOVITER and AMBRO, Circuit Judges, and POLLAK,[*] District Judge

(Filed March 20, 2007)

———

OPINION

———

———

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

SLOVITER, <u>Circuit Judge</u>.

Appellant Kamau A. Bailey was convicted by a jury on June 22, 2005 of two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On appeal, Bailey contends that the District Court erred in denying his pretrial motions to suppress evidence resulting from allegedly illegal searches on May 19, 2001 and January 1, 2003. He also contends that his arrest on January 1, 2003 was without probable cause, that his motion for severance on the two counts should have been granted, and that the statute he was charged under is unconstitutional. We will affirm.

## I.

As we write primarily for the parties, we will discuss only those facts relevant to our analysis, which are taken from the state police officers' testimony at the suppression hearings held prior to trial (testimony that did not differ substantially from that at trial). Count I of the indictment arises out of the events occurring on May 19, 2001. In the early morning hours of that day, Pittsburgh Police Lieutenant Kevin Kraus, who was on patrol duty in a marked police car, observed a vehicle with a burned-out headlight make a right turn and drift into his lane, causing him to swerve to avoid a head-on collision. He activated his lights and siren and attempted to pull the vehicle over. The sole occupant of the vehicle, later identified as Bailey, nevertheless continued to drive, with Kraus in pursuit.

After a chase of several blocks, Bailey stopped his car in the middle of the street, quickly exited the driver's side of the vehicle, and began to run. Kraus chased Bailey on foot until Bailey leapt over a wall at the rear of a residential complex. Kraus radioed for assistance as he watched Bailey flee; other responding officers apprehended Bailey shortly thereafter. Kraus ran back to Bailey's vehicle, with its engine still running, and removed the key and locked the door. Other officers remained with Bailey's vehicle, while Kraus went to the location where Bailey was apprehended and identified Bailey as the offender who had run from him. The officers transported Bailey back to the scene.

With other officers, Kraus returned to Bailey's car parked in the middle of the street, and ordered a tow truck. Prior to the tow, the officers conducted an inventory search "pursuant to our police policy," App. at 113, and found a loaded .45 caliber pistol in the trunk, as well as a number of bags of crack cocaine. Bailey, who had been advised of his Miranda rights and arrested, told Kraus that he had received the gun from a man "named Chris from Brookline," and that the crack was for Bailey's personal use.[1] App. at 121.

Count II of the indictment arises out of the events occurring approximately a year-and-a-half later. At quarter to two in the morning on January 1, 2003, Pittsburgh Police Officer Robert Kavals was on patrol with two other officers when he observed Bailey

---

[1] At trial on cross-examination, Bailey testified that he had lied to Kraus and that the crack was actually for distribution purposes.

3

and another individual standing on the porch of an abandoned and boarded-up house in a high-crime area. Concluding that there was "really no reason for anybody to be hanging out there," Kavals identified himself as a police officer and asked to speak with Bailey and the other individual. App. at 91. Bailey and the other individual began walking away from the officers, and Kavals saw Bailey throw a shiny object into the grass. As the other individual continued to walk away, the two other officers followed him; Bailey, however, turned around after tossing the object and returned to talk to Kavals.

Kavals positioned himself so that he could see the object and identified it as a silver semi-automatic gun. As Bailey was a large individual, Kavals decided that he ought to "stall . . . [and] keep [Bailey] calm and relaxed" until the two other officers returned. App. at 93-94. He asked Bailey why he was in the area; Bailey replied that he had come to buy crack, and that he had smoked it all. Kavals also told Bailey he would simply check over the radio if there were any outstanding warrants for him and then permit him to leave. Once his back-up returned, Kavals then asked Bailey if he had a permit to carry a gun; in response, Bailey started to back up and said, "What gun? I don't have a gun." App. at 94. Following a six-minute struggle, Bailey was subdued. The officers recovered a .22 caliber semi-automatic Astra pistol from the grass, and a .22 caliber bullet from Bailey's right front pocket.

Bailey had been charged and convicted in state court on drug offenses constituting a felony punishable by imprisonment in excess of one year, and thus his

possession of the guns recovered in May 2001 and in January 2003 was illegal. He was first indicted in federal court for being a felon in possession of a firearm in February 2004.

A grand jury in the Western District of Pennsylvania returned a second superseding indictment against Bailey on August 30, 2004, charging him with two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) based upon the May 19, 2001 and January 1, 2003 incidents. Following motions made by Bailey and a December 24, 2004 initial suppression hearing, the District Court issued an opinion and order on February 14, 2005, finding no grounds to suppress the May 19, 2001 inventory search of the car and the statements to Lieutenant Kraus. The Court also denied the request to suppress the gun and .22 caliber bullet found during the January 1, 2003 arrest. Bailey moved for reconsideration with respect to the May 19, 2001 search.

At the second suppression hearing held April 25, 2005, Kraus testified that on May 19, 2001, he had followed the standardized search procedures of the Pittsburgh Police Department, which require that the entire contents of a vehicle be inventoried prior to a tow. Kraus further testified that, although he did not remember if he ever saw the department's actual written order on inventory policy, which requires that all locked or sealed containers within a vehicle "be opened and inspected," App. at 165, all the searches he had ever conducted were in keeping with the contents of that document, and

5

he was trained in accordance with such a policy. The District Court again denied the motion in an opinion and order issued May 13, 2005.

Before the trial, Bailey filed a motion for severance of the two counts, which the District Court denied. It also rejected Bailey's proposed jury instruction regarding the interstate commerce element of 18 U.S.C. § 922(g). At the jury trial, Bailey was convicted on both counts and was sentenced by the court to 235 months of imprisonment. He filed a timely appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291. This court reviews the factual findings of a district court for clear error but exercises plenary review over the legality of the denial of a motion to suppress in light of the facts found. United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998). We review the denial of a motion for severance for abuse of discretion, United States v. Hart, 273 F.3d 363, 369 (3d Cir. 2001), and apply a plenary standard of review to questions regarding a statute's constitutionality. United States v. Randolph, 364 F.3d 118, 121 (3d Cir. 2004).

## III.

A vehicle must have lawfully come into police custody before a warrantless vehicle inventory search may be conducted, United States v. Frank, 864 F.2d 992, 1001 (3d Cir. 1988), and Bailey does not dispute that the police had such lawful custody of the car after he abandoned it in the middle of the street. Bailey argues, however, that the

examination of the contents of his vehicle violated the requirement that police must conduct their inventory search pursuant to standardized, routine practices. United States v. Salmon, 944 F.2d 1106, 1120 (3d Cir. 1991). As noted above, Lieutenant Kraus testified that he had followed the same inventory search procedure in this case as he had since he became a Pittsburgh police officer in 1993, that he had been trained to follow this procedure, and that the procedure that he followed was in accord with the written policy document produced by the police department. The District Court agreed and held that this inventory search was consistent with police procedures and the search was not unconstitutional.

Bailey also argues that his arrest on January 1, 2003 was without probable cause. A warrantless arrest is "reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id.

Officer Kavals testified he saw Bailey throw an object from his pocket and begin to walk away from the scene upon the officers' approach, that during their conversation he was able to see that the object was a gun, that Bailey told him he had bought and smoked crack in the high-crime area where their encounter took place, and that Bailey denied any awareness of the gun when asked if he had a permit. Such observations

supported probable cause to arrest in this case. Moreover, under the facts and circumstances of this case, the search of Bailey's person that produced the .22 caliber bullet was incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 763 (1969).

Bailey also contends on appeal that joinder of the two counts under Rule 8 of the Federal Rules of Criminal Procedure was in error because of the factual differences between the two arrests, and that it was an abuse of discretion for the District Court to deny his motion for relief from prejudicial joinder under Rule 14. "[T]he choice of whether to sever . . . rests in the sound discretion of the district courts. Accordingly, we review a district court's denial of a motion to sever for abuse of discretion." United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005). Even if a district court abuses its discretion in denying a motion to sever, a defendant must show "clear and substantial prejudice resulting in a manifestly unfair trial" to obtain a reversal. United States v. Console, 13 F.3d 641, 655 (3d Cir. 1993) (internal citations, quotation marks, and emphases omitted). Here, the District Court removed any potential prejudice with appropriate limiting instructions that assisted the jury in properly compartmentalizing the evidence for each charge. Bailey has not met his burden to demonstrate prejudice.

Finally, Bailey asks that we preserve his challenge on appeal to 18 U.S.C. § 922(g) as unconstitutional under the Commerce Clause in the event of en banc or Supreme Court review. As he recognizes, his argument was raised and rejected in United States v. Singletary, 268 F.3d 196 (3d Cir. 2001), and it is settled that, absent

8

intervening authority, a panel cannot disturb prior precedent of this court. <u>Reich v. D.M. Sabia Co.</u>, 90 F.3d 854, 858 (3d Cir. 1996).

## IV.

We see no error in any of the challenged rulings of the District Court. For all of the above reasons, we will affirm the judgment of conviction and sentence.