**UNITED STATES of America**

v.

**Roderick Pavon SUTTON, Appellant.**

No. 06–4722.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) Feb. 15, 2008.

Filed: Feb. 29, 2008.

John M. Gallagher, Office of United States Attorney, Philadelphia, PA, for Appellee.

Robert Epstein, Defender Association of Philadelphia, Federal Court Division, Philadelphia, PA, for Appellant.

Before: SLOVITER, and SMITH, Circuit Judges, DIAMOND, District Judge.*

## OPINION

DIAMOND, District Judge.

Appellant Roderick Pavon Sutton was convicted by a jury on July 24, 2006 of armed bank robbery, in violation of 18 U.S.C. § 2113(d), using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1), possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Sutton asserts on appeal that the District Court erred in denying his motion to suppress because his warrantless arrest was conducted without probable cause. For the reasons that fol-

low, we will affirm the judgment of the District Court.

## I.

As we write primarily for the parties, we will discuss only those facts relevant to our analysis, which are taken from the suppression hearing testimony of Barry Golazeski, formerly a Lieutenant with the Easton Police Department. Golazeski testified at the hearing concerning events that occurred on January 30, 2005. At approximately 2:00 a.m. on that day, Jacqueline Olsen, who was Sutton's girlfriend, called the Easton Police Department to report Sutton's unauthorized use of her vehicle. When officers arrived at Olsen's apartment, where she resided with Sutton and their young child, Sutton was not at home.

In addition to discussing Sutton's unauthorized use of her vehicle with the officers, Olsen also told them that she had received information from a friend that there was a gun in her apartment. Olsen's friend did not state who owned the gun. Olsen told the officers that she had searched for the gun without success, but she had found three .22 caliber ammunition clips in the apartment. After Olsen asked the officers to help her search for the gun, she remembered that she had failed to look in a storage compartment in her sofa. Olsen opened the compartment, and the officers found a .357 caliber revolver in that spot. Olsen told the officers that the gun did not belong to her and that she had no idea about it. Although Olsen had not personally observed Sutton in possession of the gun, she told the officers that it was his. Olsen also told the officers that she recently had seen Sutton with a sum of cash, and that she had heard him

---

* The Honorable Gustave Diamond, Senior District Judge for the United States District Court for the Western District of Pennsylvania, sitting by designation.

talking on the telephone about a recent bank robbery and had gotten the impression that he was involved in the robbery.

Olsen requested that the police not take any immediate action against Sutton in regard to his unauthorized use of her vehicle. The officers granted Olsen's request, in part because the National Crime Information Center computer system was not working at that time, thus they could not determine whether the .357 caliber revolver was reported stolen or whether Sutton had a prior felony conviction which prohibited him from possessing a firearm. The officers indicated they would follow up with Olsen later that morning.

Subsequently, at 5:00 a.m. in the morning, officers checked back with Olsen, who indicated that Sutton had come home and was asleep in the bedroom of the apartment. Olsen again requested that no action be taken at that time, and the officers left the apartment.

Later that same morning, an officer performed a criminal history check of Sutton, which revealed that he had two prior felony convictions and was therefore prohibited from possessing a firearm. The officer consulted with a local Assistant District Attorney, who advised that there was enough evidence to arrest Sutton for possession of the firearm.

In the late morning and early afternoon hours of January 30, 2005, officers conducted surveillance around Olsen's apartment. Officers observed Sutton leave the apartment, place a bag inside Olsen's vehicle, re-enter the apartment and then exit again. When Sutton got into the vehicle and attempted to drive away, the officers conducted a traffic stop. The officers advised Sutton that they had recovered the .357 caliber revolver and were taking him into custody for illegally possessing the firearm. Sutton was arrested at 2:41 p.m.[1]

Sutton filed a motion to suppress, asserting that his warrantless arrest violated the Fourth Amendment, and, therefore, the statements he made following his arrest should be suppressed.[2] The District Court denied the motion to suppress, finding that probable cause existed for Sutton's arrest because Olsen's tip that Sutton had left a firearm in her apartment was corroborated by the fact that a .357 caliber revolver and three .22 caliber ammunition clips were found in the apartment, and Sutton had a prior felony conviction which prohibited him from possessing a firearm.

After a jury trial, Sutton was convicted on all counts and subsequently sentenced by the District Court to 252 months of imprisonment. Sutton now appeals, challenging the District Court's denial of his suppression motion.

1. Following his arrest, the police searched Olsen's vehicle and apartment and recovered evidence linking Sutton to the bank robbery, as well as other contraband. In addition, Sutton signed a written waiver of his *Miranda* rights and made a number of false exculpatory statements to the police when he was interviewed. Finally, when Sutton was strip searched at the police station, a bag containing crack cocaine was found hidden between his buttocks.

2. In his appellate brief, Sutton states that he moved the District Court to suppress the evidence that police obtained as a result of his arrest, including physical evidence, exculpatory misrepresentations from his interrogation and recorded phone calls from his detention. *See* Appellant's Br. at 11. To be clear, in his "Motion to Suppress Statements" and brief in support of same in the District Court, Sutton only sought to suppress the statements he made following his arrest, not any physical evidence. *See* App. at 32–52. The District Court ruled that Sutton's arrest was supported by probable cause, and the statements he made following his arrest were not subject to suppression. *Id.* at 6–10.

## II.

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction over the final order of the District Court under 28 U.S.C. § 1291. On the issue of whether probable cause existed for Sutton's arrest, we review the District Court's findings of fact for clear error and its legal conclusions *de novo.* *United States v. Myers,* 308 F.3d 251, 255 (3d Cir.2002).

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.*

Sutton argues that the police lacked probable cause to arrest him for possessing a firearm based on Olsen's tip because she had no reason to believe he possessed the gun, her reliability was dubious, and the police did not corroborate her tip. Contrary to Sutton's position, the police had ample probable cause to arrest him.

As an initial matter, Olsen's face to face report concerning the existence of a gun in her apartment and her belief that it belonged to Sutton is entitled to more weight than an anonymous tip. *See United States v. Valentine,* 232 F.3d 350, 354 (3d Cir. 2000) (holding that "a tip given face to face is more reliable than an anonymous telephone call"). Further, Olsen exposed herself to significant risk by providing information to the police about Sutton, who was her live-in boyfriend. *See id.* (observing that an informant who gives the police information about a neighbor or someone nearby "is exposed to a risk of retaliation from the person named, making it less likely that the informant will lie").

Although Olsen related to the officers that a friend told her there was a gun in the apartment, but did not state who owned the gun, it was reasonable for the officers to believe Olsen's report that the gun belonged to Sutton. The officers found the gun in a storage compartment in Olsen's sofa, so it was logical for them to conclude that the gun belonged to Sutton because the only other occupants of the apartment were Olsen, who disavowed ownership of the gun, and the couple's minor child. Moreover, the fact that the gun was found inside a storage compartment further bolsters the finding of probable cause because only residents of the apartment likely would have known of the compartment's existence, and would have been the only individuals who had access to it.[3] In addition, Olsen told the officers she recently had seen Sutton with a sum of cash, and she had heard him talking on the telephone about a recent bank robbery, which had given her the impression that he was involved in that robbery. Given these facts, it was reasonable for the officers to conclude that a person who participated in a bank robbery was likely to possess a firearm.

The officers were able to judge Olsen's demeanor and the veracity of her statements first hand,[4] and reasonably deter-

---

**3.** Sutton's argument that the gun could have belonged to someone else who had access to Olsen's apartment is unavailing. There is no indication in the testimony from the suppression hearing that anyone other than Olsen, Sutton or their child had access to the apartment.

**4.** We reject Sutton's argument that the police knew Olsen to be of dubious reliability because she had previously been convicted of

mined based on their assessment of the information she provided that the gun belonged to Sutton. *See Valentine*, 232 F.3d at 354 (stating "when an informant relates information to the police face to face, the officer has an opportunity to assess the informant's credibility and demeanor"). The police later verified that Sutton had prior felony convictions which prohibited him from possessing a firearm. Although Sutton asserts that the police did not do enough to corroborate Olsen's tip that the gun belonged to him, the arresting officers were "not required to undertake an exhaustive investigation in order to validate the probable cause." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n. 8 (3d Cir.2000). Based on the circumstances of this case, the District Court correctly concluded that probable cause existed for the police to arrest Sutton for possessing a firearm.

### III.

We see no error in the District Court's challenged ruling on Sutton's motion to suppress. For all of the above reasons, we will affirm the District Court's judgment.

embezzlement and theft. The testimony at the suppression hearing did not indicate that the police were aware of Olsen's prior convictions. Furthermore, as discussed herein, Olsen provided information about Sutton in a face to face meeting with the officers, so they were able to assess her credibility firsthand.