Justice Scalia
delivered the opinion of the Court.
We decide whether a former Attorney General enjoys immunity from suit for allegedly authorizing federal prosecutors to obtain valid material-witness warrants for detention of terrorism suspects whom they would otherwise lack probable cause to arrest.
I
The federal material-witness statute authorizes judges to “order the arrest of [a] person” whose testimony “is material in a criminal proceeding ... if it is shown that it may become impracticable to secure the presence of the person by subpoena.” 18 U. S. C. § 3144. Material witnesses enjoy the same constitutional right to pretrial release as other federal detainees, and federal law requires release if their testimony “can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice.” Ibid.
*734 Because this case arises from a motion to dismiss, we accept as true the factual allegations in Abdullah al-Kidd’s complaint. The complaint alleges that, in the aftermath of the September 11th terrorist attacks, then-Attorney General John Ashcroft authorized federal prosecutors and law enforcement officials to use the material-witness statute to detain individuals with suspected ties to terrorist organizations. It is alleged that federal officials had no intention of calling most of these individuals as witnesses, and that they were detained, at Ashcroft’s direction, because federal officials suspected them of supporting terrorism but lacked sufficient evidence to charge them with a crime.
It is alleged that this pretextual detention policy led to the material-witness arrest of al-Kidd, a native-born United States citizen. FBI agents apprehended him in March 2003 as he checked in for a flight to Saudi Arabia. Two days earlier, federal officials had informed a Magistrate Judge that, if al-Kidd boarded his flight, they believed information “crucial” to the prosecution of Sami Omar al-Hussayen would be lost. App. 64. Al-Kidd remained in federal custody for 16 days and on supervised release until al-Hussayen’s trial concluded 14 months later. Prosecutors never called him as a witness.
In March 2005, al-Kidd filed this Bivens action, see Bivens v. Six Unknown Fed. Narcotics Agents, 403 U. S. 388 (1971), to challenge the constitutionality of Ashcroft’s alleged policy; he also asserted several other claims not relevant here against Ashcroft and others. Ashcroft filed a motion to dismiss based on absolute and qualified immunity, which the District Court denied. A divided panel of the United States Court of Appeals for the Ninth Circuit affirmed, holding that the Fourth Amendment prohibits pretextual arrests absent probable cause of criminal wrongdoing, and that Ashcroft could not claim qualified or absolute immunity. See 580 F. 3d 949 (2009).
*735 Judge Bea dissented, id., at 981, and eight judges dissented from the denial of rehearing en banc, see 598 F. 3d 1129, 1137, 1142 (2010). We granted certiorari, 562 U. S. 980 (2010).
II
Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was “clearly established” at the time of the challenged conduct. Harlow v. Fitzgerald, 457 U. S. 800, 818 (1982). We recently reaffirmed that lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. See Pearson v. Callahan, 555 U. S. 223, 236 (2009).
Courts should think carefully before expending “scarce judicial resources” to resolve difficult and novel questions of constitutional or statutory interpretation that will “have no effect on the outcome of the case.” Id., at 236-237; see id., at 237-242. When, however, a court of appeals does address both prongs of qualified-immunity analysis, we have discretion to correct its errors at each step. Although not necessary to reverse an erroneous judgment, doing so ensures that courts do not insulate constitutional decisions at the frontiers of the law from our review or inadvertently undermine the values qualified immunity seeks to promote. The former occurs when the constitutional-law question is wrongly decided; the latter when what is not clearly established is held to be so. In this case, the Court of Appeals’ analysis at both steps of the qualified-immunity inquiry needs correction.
A
The Fourth Amendment protects “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” An arrest, of course, qualifies as a “seizure” of a “person” under this provi *736 sion, Dunaway v. New York, 442 U. S. 200, 207-208 (1979), and so must be reasonable under the circumstances. Al-Kidd does not assert that Government officials would have acted unreasonably if they had used a material-witness warrant to arrest him for the purpose of securing his testimony for trial. See Brief for Respondent 16-17; Tr. of Oral Arg. 20-22. He contests, however (and the Court of Appeals here rejected), the reasonableness of using the warrant to detain him as a suspected criminal.
Fourth Amendment reasonableness “is predominantly an objective inquiry.” Indianapolis v. Edmond, 531 U. S. 32, 47 (2000). We ask whether “the circumstances, viewed objectively, justify [the challenged] action.” Scott v. United States, 436 U. S. 128, 138 (1978). If so, that action was reasonable “whatever the subjective intent” motivating the relevant officials. Whren v. United States, 517 U. S. 806, 814 (1996). This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts, Bond v. United States, 529 U. S. 334, 338, n. 2 (2000); and it promotes evenhanded, uniform enforcement of the law, Devenpeck v. Alford, 543 U. S. 146, 153-154 (2004).
Two “limited exception[s]” to this rule are our special-needs and administrative-search cases, where “actual motivations” do matter. United States v. Knights, 534 U. S. 112, 122 (2001) (internal quotation marks omitted). A judicial warrant and probable cause are not needed where the search or seizure is justified by "special needs, beyond the normal need for law enforcement,” such as the need to deter drug use in public schools, Vernonia School Dist. 47J v. Acton, 515 U. S. 646, 653 (1995) (internal quotation marks omitted), or the need to ensure that railroad employees engaged in train operations are not under the influence of drugs or alcohol, Skinner v. Railway Labor Executives’ Assn., 489 U. S. 602 (1989); and where the search or seizure is in execution of an administrative warrant authorizing, for example, an inspection of fire-damaged premises to determine the cause, *737 Michigan v. Clifford, 464 U. S. 287, 294 (1984) (plurality opinion), or an inspection of residential premises to ensure compliance with a housing code, Camara v. Municipal Court of City and County of San Francisco, 387 U. S. 523, 535-538 (1967). But those exceptions do not apply where the officer’s purpose is not to attend to the special needs or to the investigation for which the administrative inspection is justified. See Whren, supra, at 811-812. The Government seeks to justify the present arrest on the basis of a properly issued judicial warrant — so that the special-needs and administrative-inspection cases cannot be the basis for a purpose inquiry here.
Apart from those cases, we have almost uniformly rejected invitations to probe subjective intent. See Brigham City v. Stuart, 547 U. S. 398, 404 (2006). There is one category of exception, upon which the Court of Appeals principally relied. In Edmond, supra, we held that the Fourth Amendment could not condone suspieionless vehicle checkpoints set up for the purpose of detecting illegal narcotics. Although we had previously approved vehicle checkpoints set up for the purpose of keeping off the road unlicensed drivers, Delaware v. Prouse, 440 U. S. 648, 663 (1979), or alcohol-impaired drivers, Michigan Dept of State Police v. Sitz, 496 U. S. 444 (1990); and for the purpose of interdicting those who illegally cross the border, United States v. Martinez-Fuerte, 428 U. S. 543 (1976); we found the drug-detection purpose in Edmond invalidating because it was “ultimately indistinguishable from the general interest in crime control,” 531 U. S., at 44. In the Court of Appeals’ view, Edmond established that “ 'programmatic purpose’ is relevant to Fourth Amendment analysis of programs of seizures without probable cause.” 580 F. 3d, at 968.
That was mistaken. It was not the absence of probable cause that triggered the invalidating-purpose inquiry in Edmond. To the contrary, Edmond explicitly said that it would approve checkpoint stops for “general crime control *738 purposes” that were based upon merely “some quantum of individualized suspicion.” 531 U. S., at 47. Purpose was relevant in Edmond because “programmatic purposes may be relevant to the validity of Fourth Amendment intrusions undertaken pursuant to a general scheme without individualized suspicion” id., at 45-46 (emphasis added).[1]
Needless to say, warrantless, “suspicionless intrusions pursuant to a general scheme,” id., at 47, are far removed from the facts of this case. A warrant issued by a neutral Magistrate Judge authorized al-Kidd’s arrest. The affidavit accompanying the warrant application (as al-Kidd concedes) gave individualized reasons to believe that he was a material witness and that he would soon disappear. The existence of a judicial warrant based on individualized suspicion takes this case outside the domain of not only our special-needs and administrative-search cases, but of Edmond as well.
A warrant based on individualized suspicion[2] in fact grants more protection against the malevolent and the incompetent than existed in most of our cases eschewing inquiries into intent. In Whren, supra, at 813, and Devenpeck, supra, at 153, we declined to probe the motives behind seizures supported by probable cause but lacking a warrant approved by a detached magistrate. Terry v. Ohio, 392 U. S. 1, 21-22 *739 (1968), and Knights, 534 U. S., at 121-122, applied an objective standard to warrantless searches justified by a lesser showing of reasonable suspicion. We review even some suspicionless searches for objective reasonableness. See Bond, 529 U. S., at 335-336, 338, n. 2. If concerns about improper motives and pretext do not justify subjective inquiries in those less protective contexts, we see no reason to adopt that inquiry here.
Al-Kidd would read our cases more narrowly. He asserts that Whren establishes that we ignore subjective intent only when there exists “probable cause to believe that a violation of law has occurred,” 517 U. S., at 811 — which was not the case here. That is a distortion of Whren. Our unanimous opinion held that we would not look behind an objectively reasonable traffic stop to determine whether racial profiling or a desire to investigate other potential crimes was the real motive. See id., at 810, 813. In the course of our analysis, we dismissed Whren’s reliance on our inventory-search and administrative-inspection cases by explaining that those cases do not “endors[e] the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred,” id., at 811. But to say that ulterior motives do not invalidate a search that is legitimate because of probable cause to believe a crime has occurred is not to say that it does invalidate all searches that are legitimate for other reasons.
“[OJnly an undiscerning reader,” ibid., would think otherwise. We referred to probable cause to believe that a violation of law had occurred because that was the legitimating factor in the case at hand. But the analysis of our opinion swept broadly to reject inquiries into motive generally. See id., at 812-815. We remarked that our special-needs and administrative-inspection eases are unusual in their concern for pretext, and do nothing more than “explain that the exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inven *740 tory or administrative regulation, is not accorded to searches that are not made for those purposes,” id., at 811-812. And our opinion emphasized that we had at that time (prior to Edmond) rejected every request to examine subjective intent outside the narrow context of special needs and administrative inspections. See 517 U. S., at 812. Thus, al-Kidd’s approach adds an “only” to a sentence plucked from the Whren opinion, and then elevates that sentence (as so revised) over the remainder of the opinion, and over the consistent holdings of our other cases.
Because al-Kidd concedes that individualized suspicion supported the issuance of the material-witness arrest warrant; and does not assert that his arrest would have been unconstitutional absent the alleged pretextual use of the warrant; we find no Fourth Amendment violation.[3] Efficient[4] and evenhanded application of the law demands that we look to whether the arrest is objectively justified, rather than to the motive of the arresting officer.
*741 B
A Government official’s conduct violates clearly established law when, at the time of the challenged conduct, “[t]he contours of [a] right [are] sufficiently clear” that every “reasonable official would [have understood] that what he is doing violates that right.” Anderson v. Creighton, 483 U. S. 635, 640 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. See ibid.; Malley v. Briggs, 475 U. S. 335, 341 (1986). The constitutional question in this case falls far short of that threshold.
At the time of al-Kidd’s arrest, not a single judicial opinion had held that pretext could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional. A district-court opinion had suggested, in a footnoted dictum devoid of supporting citation, that using such a warrant for preventive detention of suspects “is an illegitimate use of the statute” — implying (we accept for the sake of argument) that the detention would therefore be unconstitutional. United States v. Awadallah, 202 F. Supp. 2d 55, 77, n. 28 (SDNY 2002). The Court of Appeals thought nothing could “have given John Ashcroft fair[er] warning” that his conduct violated the Fourth Amendment, because the footnoted dictum “call[ed] out Ashcroft by name”! 580 F. 3d, at 972-973 (internal quotation marks omitted; emphasis added). We will indulge the assumption (though it does not seem to us realistic) that Justice Department lawyers bring to the Attorney General’s personal attention all district judges’ footnoted speculations that boldly “call him out by name.” On that assumption, would it prove that for him (and for him only?) it became clearly established that pretextual use of the material-witness statute rendered the arrest unconstitutional? An extraordinary proposition. Even a district judge’s ipse dixit of a holding is not “controlling authority” in any jurisdiction, much less in the entire United States; and his ipse dixit of a footnoted dictum falls far short *742 of what is necessary absent controlling authority: a robust “consensus of cases of persuasive authority.” Wilson v. Layne, 526 U. S. 603, 617 (1999).
The Court of Appeals’ other cases “clearly establishing” the constitutional violation are, of course, those we rejected as irrelevant in our discussion of whether there was any constitutional violation at all. And the Court of Appeals’ reference to those cases here makes the same error of assuming that purpose is only disregarded when there is probable cause to suspect a violation of law.
The Court of Appeals also found clearly established law lurking in the broad “history and purposes of the Fourth Amendment.” 580 F. 3d, at 971. We have repeatedly told courts — and the Ninth Circuit in particular, see Brosseau v. Haugen, 543 U. S. 194, 198-199 (2004) (per curiam) — not to define clearly established law at a high level of generality. See also, e. g., Wilson, supra, at 615; Anderson, supra, at 639-640; cf. Sawyer v. Smith, 497 U. S. 227, 236 (1990). The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established. See Saucier v. Katz, 533 U. S. 194, 201-202 (2001); Wilson, supra, at 615.
The same is true of the Court of Appeals’ broad historical assertions. The Fourth Amendment was a response to the English Crown’s use of general warrants, which often allowed royal officials to search and seize whatever and whomever they pleased while investigating crimes or affronts to the Crown. See Stanford v. Texas, 379 U. S. 476, 481-485 (1965). According to the Court of Appeals, Ashcroft should have seen that a pretextual warrant similarly “gut[s] the substantive protections of the Fourth Amendmen[t]” and allows the State “to arrest upon the executive’s mere suspicion." 580 F. 3d, at 972.
Ashcroft must be forgiven for missing the parallel, which escapes us as well. The principal evil of the general war *743 rant was addressed by the Fourth Amendment’s particularity requirement, Stanford, supra, at 485, which Ashcroft’s alleged policy made no effort to evade. The warrant authorizing al-Kidd’s arrest named al-Kidd and only al-Kidd. It might be argued, perhaps, that when, in response to the English abuses,, the Fourth Amendment said that warrants could only issue “on probable cause” it meant only probable cause to suspect a violation of law, and not probable cause to believe that the individual named in the warrant was a material witness. But that would make all arrests pursuant to material-witness warrants unconstitutional, whether pretextual or not — and that is not the position taken by al-Kidd in this case.
While featuring a District Court’s footnoted dictum, the Court of Appeals made no mention of this Court’s affirmation in Edmond of the “predominant] ” rule that reasonableness is an objective inquiry, 531 U. S., at 47. Nor did it mention Whren’s and Knights’ statements that subjective intent mattered in a very limited subset of our Fourth Amendment cases; or Terry’s objective evaluation of investigatory searches premised on reasonable suspicion rather than probable cause; or Bond’s objective evaluation of a suspicionless investigatory search. The Court of Appeals seems to have cherry-picked the aspects of our opinions that gave colorable support to the proposition that the unconstitutionality of the action here was clearly established.
Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects “all but the plainly incompetent or those who knowingly violate the law.” Malley, supra, at 341. Ashcroft deserves neither label, not least because eight Court of Appeals judges agreed with his judgment in a case of first impression. See Wilson, supra, at 618. He deserves qualified immunity even assuming — contrafactually—that his alleged detention policy violated the Fourth Amendment.
*744 * * *
We hold that an objectively reasonable arrest and detention of a material witness pursuant to a validly obtained warrant cannot be challenged as unconstitutional on the basis of allegations that the arresting authority had an improper motive. Because Ashcroft did not violate clearly established law, we need not address the more difficult question whether he enjoys absolute immunity. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice Kagan took no part in the consideration or decision of this case.

The Court of Appeals also relied upon Ferguson v. Charleston, 532 U. S. 67 (2001), which held unconstitutional a program of mandatory drug testing of maternity patients. Like Edmond, that ease involved a general scheme of searches without individualized suspicion. 532 U. S., at 77, n. 10.

Justice Ginsburg suggests that our use of the word “suspicion” is peculiar because that word “ordinarily” means “that the person suspected has engaged in wrongdoing.” Post, at 749, n, 3 (opinion concurring in judgment). We disagree. No usage of the word is more common and idiomatic than a statement such as “I have a suspicion he knows something about the crime,” or even “I have a suspicion she is throwing me a surprise birthday party.” The many cases cited by Justice Ginsburg, post, at 749-750, n. 3, which use the neutral word “suspicion” in connection with wrongdoing, prove nothing except that searches and seizures for reasons other than suspected wrongdoing are rare.

 The concerns of Justices Ginsburg and Sotomayor about the validity of the warrant in this case are beside the point. See post, at 748-749
(Ginsburg, J., concurring in judgment); post, at 752 (Sotomayor, J., concurring in judgment). The validity of the warrant is not our “opening assumption,” post, at 749 (Ginsburg, J., concurring in judgment); it is the premise of al-Kidd’s argument. Al-Kidd does not claim that Ashcroft is liable because the FBI agents failed to obtain a valid warrant. He takes the validity of the warrant as a given, and argues that his arrest nevertheless violated the Constitution because it was motivated by an illegitimate purpose. His separate Fourth Amendment and statutory claims against the FBI agents who sought the material-witness warrant, which are the focus of both concurrences, are not before us.

 We may note in passing that al-Kidd alleges that the Attorney General authorized the use of material-witness warrants for detention of suspected terrorists, but not that he forbade the use of those warrants to detain material witnesses. Which means that if al-Kidd’s inquiry into actual motive is accepted, mere determination that the Attorney General promulgated the alleged policy would not alone decide the case. Al-Kidd would also have to prove that the officials who sought his material-arrest warrant were motivated by Ashcroft’s policy, not by a desire to call al-Kidd as a witness.