Jessica M. SANCHEZ, Plaintiff,

v.

Andrew J. BREMER; Jamie Cardenas; and City of Alliance, Defendants.

No. 8:11CV314.

United States District Court,
D. Nebraska.

Sept. 28, 2012.

Joshua P. Wunderlich, Kyle J. Long, Robert O. Hippe, Robert G. Pahlke, Pahlke Law Group, Scottsbluff, NE, Stacy C. Nossaman–Petitt, Nossaman, Petitt Law Firm, Scottsbluff, NE, for Plaintiff.

Harvey B. Cooper, Ryan M. Kunhart, Abrahams, Kaslow Law Firm, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

**JOHN M. GERRARD, District Judge.**

Plaintiff Jessica M. Sanchez brings this action against two police officers, Andrew J. Bremer and Jamie Cardenas, both employed by the third defendant, the City of Alliance, Nebraska. Filing 1 at ¶¶ 7–11. Sanchez claims that she sought help from the Alliance Police Department because she had been the victim of a sexual assault, but that she was wrongfully arrested and subjected to excessive force by Bremer and Cardenas. Filing 1 at 4–14. Sanchez brings her claims under 42 U.S.C. § 1983, alleging that the defendants violated her right to be free from unreasonable seizures under the Fourth Amendment; that Bremer is liable as a supervisor for any acts of Cardenas; and that the City of Alliance caused these violations through its policies and procedures.[1] Filing 1 at ¶¶ 11, 33–45.

This matter is before the Court on the defendants' motion for summary judgment (filing 19). The Court has considered the parties' briefs (filings 21, 55, and 57) and indexes of evidence (filings 20 and 56). After a lengthy dispute over discovery, the motion is ripe. For the reasons discussed below, the Court finds that defendants' motion for summary judgment should be granted.

## I. FACTUAL BACKGROUND

The following facts are those stated in the parties' briefs that are supported by the record, that the parties have admitted, or that the parties have not properly resisted. *See,* NECivR 56.1(b)(1); Fed. R.Civ.P. 56(c)(1)(A) and (e)(2). Unless otherwise noted, the following facts are undisputed for purposes of the pending motion for summary judgment.

On the night of September 5, 2009, through the early morning of September 6, Sanchez was attending a party with friends at a house in Alliance, Nebraska. Filing 1 at ¶ 13. She alleges that someone at the house slipped drugs into her drink, filing 1 at 14; and she averred that she did not voluntarily or knowingly ingest any illegal or hallucinogenic substances between September 5 and 6, 2009. Filing 26–1 at ¶ 4. Sanchez alleges that at some point that evening, she was sexually assaulted by one or more men. Filing 1 at ¶ 15.

Around 3:20 a.m. on September 6, 2009, Sanchez went to the lobby of the Alliance Police Department, where she was met by Bremer and Cardenas. Filing 20–2 at ¶ 4. Sanchez was crying and hysterical, and kept yelling that someone was after her. Filing 20–1 at ¶¶ 3–4; filing 20–5 at 8–9. Bremer observed that Sanchez was extremely intoxicated, and he believed she was under the influence of some drug. Filing 20–2 at ¶ 4. She told Cardenas that she had been sexually assaulted by several named individuals. Filing 20–1 at ¶ 4. Sanchez was yelling obscenities, and Bremer told her to have a seat and try to calm down. Filing 20–1 at ¶¶ 4–5.

Sanchez sat down and kept talking, but appeared unable to concentrate and kept changing topics. Filing 20–1 at ¶ 5. She could not sit still and continued to yell at Bremer and Cardenas. Filing 20–1 at ¶ 5. Bremer called for an ambulance. Filing 20–1 at ¶ 6. Sanchez remained agitated, but Cardenas (who is female) was able to get more details from her. Filing 20–1 at ¶ 6–8. Sanchez did not want to talk to Bremer (who is male) and did not want him there: she continued yelling obscenities at him and said, "you need to leave,

---

1. In her complaint, Sanchez also alleged that she was "wrongfully charged" with assault and assaulting an officer. Filing 1 at ¶ 1. But this allegation did not find its way into the causes of action set forth in the complaint, nor has Sanchez otherwise advanced this as an independent violation of her rights. Filing 55 at 6.

I'm gonna fucking kill you!" Filing 20–1 at ¶ 8. A paramedic arrived but was unable to help. Filing 20–1 at ¶ 9.

Sanchez again told Bremer, "you need to leave, I'm gonna kill you if you don't leave!" Filing 20–1 at ¶ 10. Cardenas stood up next to Sanchez. Filing 20–1 at ¶ 10. Sanchez then reached over, and while still sitting, grabbed the chair next to her. Filing 20–5 at 12. The chair hit Cardenas in the shin on its initial upward movement. Filing 20–1 at ¶ 10; filing 20–2 at ¶ 6; filing 20–5 at 12, 28, 38. At this point Bremer's and Cardenas' descriptions diverge slightly. According to Bremer, Sanchez then attempted to swing the chair at Cardenas, by first swinging the chair to her right and then back to her left toward Cardenas. Filing 20–2 at ¶ 6; filing 20–5 at 12. Cardenas averred that Sanchez attempted to *throw* the chair at her. Filing 20–1 at ¶ 10. Either way, Cardenas had to push the chair back down with both hands to avoid being hit. Filing 20–1 at ¶ 10; filing 20–2 at ¶ 6. Cardenas stated that the blow to the shin caused pain, that she noticed bruising on her leg several hours later, and that her shin was sore for a week. Filing 20–5 at 29; filing 20–1 at ¶ 28; filing 20–8.

Sanchez started to stand, and Cardenas grabbed her left arm. Filing 20–1 at ¶ 10. Sanchez began to resist, so Cardenas placed Sanchez's left arm behind her back. Filing 20–1 at ¶ 10. Bremer then grabbed Sanchez's right arm and handcuffed her. Filing 20–1 at ¶ 10; filing 20–2 at ¶ 7. While handcuffed, Sanchez began to kick backward, striking Bremer in both shins several times. Filing 20–2 at ¶ 7; filing 20–1 at ¶ 11. Bremer stated that the kicks caused him pain and that he later observed a bruise on his left shin. Filing 20–5 at 12, 14; filing 20–2 at ¶¶ 7, 15; filing 20–7.

Bremer and Cardenas then transported Sanchez to the hospital, where she agreed to a sexual assault examination by hospital staff. Filing 20–2 at ¶¶ 8, 12; filing 20–1 at ¶¶ 14–16. On the way there, Sanchez remained agitated and refused to cooperate. Filing 20–2 at ¶¶ 8–11; filing 20–1 at ¶¶ 11–14. Sanchez did not calm down until several hours had passed and she had been medicated. Filing 20–1 at ¶¶ 23–24. Once she calmed down, she told Cardenas that she had used peyote the night before. Filing 20–1 at ¶ 25. She again told Cardenas that she had been sexually assaulted by the same individuals she had named earlier. Filing 20–1 at ¶ 25.

The sexual assault examination was performed around 7:30 that morning. Filing 20–1 at ¶ 26. The examination revealed no signs of recent sexual intercourse. Filing 20–1 at ¶ 26. The hospital also tested Sanchez's blood for alcohol and drugs. Filing 20–2 at ¶ 13. Her blood alcohol level was .250, but there was no evidence that she had used peyote. Filing 20–2 at ¶ 13; filing 20–1 at ¶ 31. Sanchez was then taken to jail and charged with third degree assault on an officer and attempted second degree assault. Filing 56 at 62; filing 20–1 at ¶ 28.

Sanchez does not concede the officers' description of the events that occurred in the Alliance Police Department lobby. She asserts in her brief that she did not do anything that would have given the officers probable cause to make an arrest. However, the record, including Sanchez's affidavit, reveals that she has no memory whatsoever of the events that occurred at the Alliance Police Department. Filing 26–1 at ¶ 3.

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See*

Fed.R.Civ.P. 56(c)(2). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir.2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County,* 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC,* 656 F.3d 782, 791–92 (8th Cir.2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson,* 643 F.3d at 1042.

An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed.

R.Civ.P. 56(c)(4). The Court must rely upon evidence that will be admissible at trial to determine the presence or absence of a material issue of fact. *Firemen's Fund Ins. Co. v. Thien,* 8 F.3d 1307 (8th Cir.1993).

## III. ANALYSIS

Sanchez has alleged two violations of her Fourth Amendment rights: that she was arrested without probable cause, and that the arrest was made with excessive force. She concedes that there was no excessive force if her arrest was supported by probable cause. Bremer and Cardenas argue that the arrest was supported by probable cause, or that they are at least entitled to qualified immunity. The City of Alliance argues (and Sanchez agrees) that it is liable only if Bremer and Cardenas actually violated Sanchez's rights. *See* filing 55 at 11.

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause. *Borgman v. Kedley,* 646 F.3d 518, 522–23 (8th Cir. 2011). Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense. *Id.* at 523.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). In the context of a wrongful arrest, officers are entitled to qualified immunity if the arrest was supported by "arguable probable cause." *Walker v. City of Pine Bluff,* 414 F.3d 989, 992 (8th Cir.2005). Arguable probable cause exists where an officer ar-

rests a suspect without probable cause, so long as the officer was "objectively reasonable" in believing probable cause existed. *Borgman,* 646 F.3d at 523.

Viewing the undisputed facts in the light most favorable to Sanchez, and drawing all reasonable inferences in her favor, the Court finds that Bremer and Cardenas had probable cause to arrest Sanchez. Therefore, not only are Bremer and Cardenas entitled to qualified immunity, they are entitled to summary judgment on the merits. And because there was no violation of Sanchez's constitutional rights, the City is also entitled to summary judgment.

Sanchez disputes defendants' descriptions of the incident, but because she has no memory of the event, she is unable to affirmatively offer contradictory evidence. Instead, Sanchez argues that the officers have given multiple, inconsistent accounts of the incident, and that under at least one officer's version, there was not probable cause to arrest her.[2] This argument is without merit: there are no meaningful inconsistencies in the officers' statements. The only difference between the two is that Cardenas stated that Sanchez was attempting to *throw* the chair at her, and Bremer stated that Sanchez was simply *swinging* the chair at Cardenas. *Compare* filing 20–1 at ¶ 10 *with* filing 20–2 at ¶ 6; filing 20–5 at 12. Either way, Sanchez picked up the chair, hit Cardenas in the shin, and then began moving the chair toward Cardenas in a way that both officers interpreted as an immediate threat. And Cardenas reacted the way anyone would react when confronted with an incoming chair at close quarters—whether thrown or swung—by placing her hands on the chair and pushing it down. As Cardenas testified at the preliminary hearing, "As soon as she started lifting that chair, I had a pretty good idea what she was going to do with it." Filing 20–5 at 39. And it is not disputed that the initial blow to Cardenas' leg was hard enough to hurt and to cause soreness for a period of time afterward.

Under any version of these events, the arrest was supported by probable cause. The subjective reason given by an officer for making an arrest "need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). In fact, the offense actually establishing probable cause need not even be " 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest." *Id.* The Court begins with the statutes cited for Sanchez's arrest.

Sanchez was charged with attempted second degree assault and third degree assault on an officer. A person commits assault in the second degree if he or she: "(a) Intentionally or knowingly causes bodily injury to another person with a dangerous instrument; [or] (b) Recklessly causes *serious* bodily injury to another person with a dangerous instrument." Neb.Rev. Stat. § 28–309 (emphasis supplied). A person commits assault on an officer in the third degree if he or she intentionally, knowingly, or recklessly causes bodily injury to a peace officer. Neb.Rev.Stat. § 28–931. "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." Neb.Rev.Stat. § 28–109(4).

---

2. Sanchez also draws attention to the affidavit for custody filled out by Bremer on September 6, 2009. Filing 56 at 52. There, Bremer wrote that Sanchez picked up a chair and attempted to swing it at Cardenas, but did not mention that Cardenas was hit in the shin. Filing 56 at 52. But contrary to Sanchez's argument, this omission does not affirmatively establish an alternate version of events where Cardenas was not hit in the shin.

Leaving aside the question whether a chair qualifies as a "dangerous instrument," Bremer and Cardenas had probable cause to arrest Sanchez for assault on an officer in the third degree: the blow to the shin caused Cardenas physical pain, and that is all the statute requires. They could also have arrested Sanchez for assault in the third degree, which has the same elements as its second degree sibling, but does not require the use of a dangerous instrument, and can also be committed simply by "[t]hreaten[ing] another in a menacing manner." Neb.Rev.Stat. § 28–310.

And even if the initial seizure of Sanchez was wrongful, when she began kicking Bremer it gave the officers probable cause to arrest her for a separate act of third degree assault or third degree assault on an officer. *See, United States v. Camacho,* 661 F.3d 718, 723 (1st Cir.2011) (resisting an arrest—even an unlawful one—is an intervening crime giving police officers independent grounds to arrest) (citing *United States v. Bailey,* 691 F.2d 1009, 1013 (11th Cir.1983) (en banc)); *United States v. Sledge,* 460 F.3d 963, 966 (8th Cir.2006) (same). In Nebraska, there is no right to use force to resist even an unlawful arrest. *See* Neb.Rev.Stat. § 28–1409(2).

Sanchez concedes that if her arrest was supported by probable cause, she was not subjected to excessive force. Likewise, because there was no underlying violation of Sanchez's rights, the City cannot be liable. *See, Speer v. City of Wynne, Arkansas,* 276 F.3d 980, 986 (8th Cir.2002); *Schulz v. Long,* 44 F.3d 643, 650 (8th Cir.1995).

## IV. CONCLUSION

The defendants have put forward evidence that, if admitted at trial, would entitle them to judgment as a matter of law. Sanchez has failed rebut that evidence, or to put forward evidence sufficient to raise an issue of fact on any of her claims. And the evidence that is before the Court, even viewed in the light most favorable to Sanchez, does not state a claim for relief under § 1983. Accordingly,

IT IS ORDERED:

1. Defendant's motion for summary judgment (filing 19) is granted;

2. The case is dismissed; and

3. A separate judgment will be entered.