**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-3517
_____

UNITED STATES OF AMERICA

v.

KAREEM SHABAZZ,
                                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 11-cr-0023)
District Judge: Honorable James M. Munley
_____

Submitted Under Third Circuit LAR 34.1(a)
(Submitted: July 8, 2013)
_____

Before: GREENAWAY, JR., SLOVITER, and BARRY, *Circuit Judges*.

(Opinion Filed: August 8, 2013)
_____

OPINION
_____


GREENAWAY, JR., *Circuit Judge*.

Kareem Shabazz ("Shabazz") appeals the District Court's denial of his motion to

suppress evidence seized from a vehicle in which he was a passenger at the time of his arrest. For the reasons below, we will affirm.

## I.    BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the facts essential to our discussion. On October 30, 2010, Shabazz and two other individuals, James Russell and Shaelyn Joy Davis ("Shay"), robbed a bank in Pennsylvania while brandishing guns. Joseph Swerdon ("Swerdon") and Kirk Robinson drove the getaway cars. Law enforcement was initially unsuccessful in identifying the robbers.

Two months later, Swerdon called a local Federal Bureau of Investigations office and voluntarily told agents that he had information about the bank robbery. Swerdon provided the FBI with the names of the robbers and information about their roles, including his own. More important, some of the facts Swerdon provided were details that had not been made public, supporting the veracity of his uncorroborated statements.

As part of the ongoing investigation into the bank robbery, the FBI enlisted Swerdon's cooperation. Specifically, Swerdon participated in recorded phone calls with the other robbery conspirators, including Shabazz. On December 28, 2010, Swerdon placed a recorded telephone call to Shabazz. During this phone call, Shabazz and Swerdon discussed the bank robbery. Later that day, FBI agents recorded a second phone conversation between Swerdon and Shabazz, during which they discussed the plan for an upcoming home invasion robbery. They discussed specifics of the plan, including that

2

Swerdon would drive to New York to pick up Shabazz and that Shay would also participate in the robbery. Swerdon also specifically asked Shabazz if he would be bringing "the ratchets" for the robbery, to which Shabazz replied, "We got everything on this end." (App. 90-91.) On December 29, 2010, the agents recorded a conversation between Swerdon and Shay, in which they discussed the upcoming home robbery.

Based on these conversations and with Swerdon's cooperation, the agents developed a plan to arrest Shabazz after Swerdon picked him up for the home robbery. The agents arranged for FBI air and ground surveillance to follow Swerdon's vehicle from Pennsylvania to New York, as well as on the return trip. The agents also provided Swerdon with a body recorder, and instructed him to convince Shabazz to place any bags he possessed in the trunk of the car for safety reasons.

On December 30, 2010, in accordance with the plan, Swerdon drove to New York to pick up Shabazz. Swerdon called Shabazz twice to get directions to the house where Shabazz was and called the agents to inform them about the conversations. Upon Swerdon's arrival at the designated house, FBI air surveillance observed two unidentified black males exiting the house carrying bags. One of the unidentified black males then placed the bags in the trunk of Swerdon's car and entered the front passenger-side seat. Swerdon then began driving back to Pennsylvania.

Once Swerdon crossed state lines, state police initiated a traffic stop of Swerdon's car and arrested Shabazz. After Shabazz was placed in restraints, agents opened the

3

trunk, searched the bags within, and found a short-barreled shotgun, shotgun shells, two handguns, a clip with bullets, and gloves, among other things.

Shabazz was subsequently indicted for bank robbery, brandishing a firearm during a bank robbery, and for being a felon in possession of a firearm. Shabazz filed a motion seeking to suppress the evidence from the bags seized from Swerdon's vehicle. The District Court held a suppression hearing. Two FBI agents testified, and the recordings of the two December 28, 2010 phone conversations between Swerdon and Shabazz were played. (App. 75, 84.) One agent testified that "ratchets" is a term for guns, and that the agents listening to the recording interpreted the exchange to mean that Shabazz would bring firearms with him for use during the home robbery. (App. 83.) Shabazz proffered no evidence of his own. The District Court denied the motion to suppress. The District Court found: (1) Shabazz lacked standing to challenge the search of the bags, (2) assuming Shabazz had standing, the search of the bags was sound because Swerdon consented to the search, and (3) the search was sound as a search incident to lawful arrest.

Following a jury trial, Shabazz was found guilty of all counts[1] and was sentenced to life imprisonment. Shabazz now appeals the denial of his motion to suppress.

## II.    JURISDICTION AND STANDARD OF REVIEW

---

[1] A superseding indictment added two additional charges against Shabazz: conspiracy to use a firearm during a bank robbery and transportation of firearms in interstate commerce for the purpose of committing a bank robbery.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have

appellate jurisdiction pursuant to 28 U.S.C. § 1291.

"On appeal from the denial of a motion to suppress, we review a district court's

factual findings for clear error, and we exercise de novo review over its application of the

law to those factual findings." *United States v. Pavulak*, 700 F.3d 651, 660 (3d Cir.

2012) (emphasis omitted).

## III. ANALYSIS

Shabazz objects to the District Court's denial of his motion to suppress on several

grounds. Each argument fails.[2]

---

[2] We note at the onset that Shabazz does not appear to have challenged the District
Court's finding that the search and seizure of the bags was lawful on account of
Swerdon's consent, and thus, Shabazz may have waived this argument. *See United States
v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005). If we were to consider it, the District
Court's finding on consent would give us pause. A consent is only a valid exception to
the warrant and probable cause requirements if the person giving consent possesses
authority over the item searched. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219
(1973); *United States v. Matlock*, 415 U.S. 164, 171 (1974). It is clear that Swerdon, as
the driver and owner of the vehicle, had authority to consent to a full search of the
vehicle, including the trunk. *See United States v. Morales*, 861 F.2d 396, 399 (3d Cir.
1988). It is less clear that Swerdon had authority over the closed bags Shabazz placed in
the trunk and thus, whether Swerdon could provide a valid consent to the search of those
bags. *See Frazier v. Cupp*, 394 U.S. 731, 740 (1969) (cousin's consent to a search of
defendant's bag valid because the bag was used jointly by both men); *United States v.
Jaras*, 86 F.3d 383, 389 (5th Cir. 1996) (finding that a driver of a vehicle had no
authority to give consent to the search of passenger's suitcases in the trunk); *United
States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993) (boyfriend's actual authority to consent
to search of rental car did not extend to search of girlfriend's purse located in trunk). We
need not address waiver or consent here because we will affirm the search on other
grounds.

A. Standing

Shabazz's argument that the District Court erred in finding that he had no standing to challenge the search and seizure of the vehicle and the bags within is without merit. To establish standing, the individual challenging the search has the burden of establishing that he had a reasonable expectation of privacy in the property searched and the item seized. *Minnesota v. Olson*, 495 U.S. 91, 95-97 (1990). Because Shabazz was not the owner of the vehicle but was merely a passenger, he had no reasonable expectation of privacy in the vehicle and thus has no standing to contest its stop and subsequent search. *See Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978); *see also United States v. Baker*, 221 F.3d 438, 441-42 (3d Cir. 2000). Whether Shabazz had a reasonable expectation of privacy in the bags that were placed in the trunk may be a different question *if* Shabazz had claimed ownership or established a possessory interest in them. *See Bond v. United States*, 529 U.S. 334, 338-39 (2000) (holding that a bus passenger maintains an expectation of privacy in luggage placed in an overhead compartment); *United States v. Place*, 462 U.S. 696, 707 (1983) ("[A] person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment."); *see also United States v. Worthon*, 520 F.3d 1173, 1182 (10th Cir. 2008) (suggesting that a passenger may have a reasonable expectation of privacy in bags in a car if he asserts ownership of them). However, Shabazz did not claim ownership of the bags at the time of arrest; nor did he claim by affidavit or present any evidence at the suppression hearing that the bags and

6

their contents were his. Shabazz contends his ownership of and possessory interest in the bags is established by the agent's hearing testimony that Shabazz was observed leaving the house with the bags and placing them in the trunk of the car. We do not agree; evidence that Shabazz possessed the bags momentarily while he transported them from the house to the car is insufficient to meet his burden in establishing a privacy interest in the bags searched. Shabazz fails to establish standing here.

B. <u>Search Incident to Arrest</u>

Shabazz also argues that the District Court erred in holding that the search and seizure of the bags was lawful as a search incident to arrest. Shabazz first contends that there was no probable cause to arrest him, and thus, the evidence seized from the bags must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963) (requiring the suppression of evidence seized as a result of an unlawful arrest).

It is well established that a search incident to a warrantless arrest is valid only if the arrest itself is valid. *United States v. Kithcart*, 134 F.3d 529, 531 (3d Cir. 1998). An arrest without a warrant is lawful if there is probable cause. *United States v. Watson*, 423 U.S. 411, 417 (1976). Probable cause to arrest exists when a reasonable law enforcement officer has cause to believe than an offense has been committed and that the person being arrested committed that offense. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (defining probable cause

7

as having a "reasonable ground for belief of guilt").  The probable cause inquiry requires us to ask whether, at the moment of arrest, "the facts and circumstances [the agents had] within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing [that Shabazz] had committed or was committing an offense."  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The FBI agents here had probable cause to arrest Shabazz for both the bank robbery and the planned home invasion.  Indeed, Shabazz concedes that the agents had "probable cause to arrest Shabazz *if he could be identified*."  (Appellant Br. 13.)  In other words, Shabazz contends that there was not sufficient probable cause to establish that the passenger side occupant of the vehicle was indeed Shabazz.  Shabazz argues that, because the phone recordings had indicated that there would be three robbers, and two black men were observed exiting the house and only one entered Swerdon's vehicle, agents could not have been sure that the man they were arresting was actually Shabazz.

As the Supreme Court has noted, however, the standard for probable cause does not require certainty.  *Illinois v. Gates*, 462 U.S. 213, 246 (1983); *see also Wilson v. Russo*, 212 F.3d 781, 793 n.2 (3d Cir. 2000).  Moreover, courts must look at the "totality of the circumstances" and use "common sense" in evaluating the existence of probable cause.  *United States v. Glasser*, 750 F.2d 1197, 1205-06 (3d Cir. 1984).  Here, the agents had probable cause to believe that the passenger in Swerdon's vehicle was indeed Shabazz.  Shabazz himself had indicated in the recorded phone conversations that he

8

would drive with Swerdon to Pennsylvania. Additionally, at no point did Swerdon, who had cooperated fully with agents, indicate in any way that it was not Shabazz in the passenger seat.

Shabazz next argues that the search incident to arrest was not valid because it was unreasonable to believe that the vehicle could contain evidence of the crime of arrest to justify the search. "Police may search a vehicle incident to [arrest if] . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009). Shabazz contends that, because nearly two months had passed between the bank robbery and the day of arrest, the agents could not reasonably believe that evidence of the bank robbery would be found. We disagree.

Swerdon had informed the agents that he had driven to pick Shabazz up from New York for the bank robbery in the same manner he was doing for the home invasion robbery. The agents knew from witness testimony that guns, masks, and bags were used in the bank robbery. They also had recorded conversations between Swerdon and Shabazz confirming that Shabazz intended to bring guns with him and had observed Shabazz placing bags in Swerdon's car. It was reasonable for the agents to believe that those bags might contain guns and other items used in the robbery two months prior.[3]

---

[3] Shabazz contends that *Gant* only permits a search incident to arrest when there is reason to believe that the vehicle contained evidence of the *offense of arrest*, and that the fact that he was charged only with the bank robbery evidences that he was arrested only for the bank robbery. We believe Shabazz reads *Gant* too narrowly in light of subsequent Supreme Court jurisprudence. *See Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)

9

We thus uphold the search and seizure of the bags as a lawful search incident to arrest as well.[4]

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's denial of the Shabazz's motion to suppress.

---

(holding that an arrest is valid under the Fourth Amendment if it is based on any offense for which police have probable cause, even if that offense is different from, and not closely related to, the offense stated by the police as the reason for the arrest). But we need not resolve this issue here.

[4] The Government also urges that we should affirm the admission of the bags and their contents into evidence under the automobile exception to the warrant requirement. *See United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002). Because we affirm on other grounds, we need not address this argument.