United States v. Watson

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

———————————————

AUGUST TERM, 2014

(ARGUED: MARCH 6, 2015          DECIDED:  May 21, 2015)

No. 14-1334

———————————————

UNITED STATES OF AMERICA

*Appellant*,

-v.-

SEVERNE WATSON

*Defendant-Appellee,*

Before:          GUIDO CALABRESI, PETER W. HALL, *Circuit Judges*, and JED S. RAKOFF, *Judge*.[1]

———————————————

The Government appeals the order of the United States District Court for the Southern District of New York (Scheindlin, *J.*) granting the motion of defendant Severne Watson to suppress physical evidence. At the time of the search of Watson and seizure of the physical evidence that was the subject of his suppression motion, the officer who conducted the search was pursuing a different robbery suspect, for whom Watson was allegedly mistaken. The district court determined, inter alia, that the physical disparities between the two men were too significant for the mistake of identity to be objectively reasonable and that the officer did not actually believe that Watson was the suspect sought. On appeal, the Government argues that the

---

[1] Hon. Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

two men looked sufficiently alike to make the search reasonable and that the district court's consideration of the officer's subjective beliefs about the facts was in error. We AFFIRM.

APPEARING FOR APPELLANTS:       ANDREA M. GRISWOLD, Assistant United States Attorney (Michael A. Levy, *on the brief*), for Preet Bharara, United States Attorney for the Southern District of New York

APPEARING FOR APPELLEE:        DAWN M. CARDI, (Ariadne Green and Chad L. Edgar, *on the brief*), Cardi and Edgar, LLP

_____

JED S. RAKOFF, District Judge

On April 2, 2013, New York City Police Officer Christopher Vaccaro, while searching for a robbery suspect named Chauncey Butler, spotted defendant Severne Watson. Allegedly perceiving a general physical resemblance between Watson and Butler, the officer exited his patrol car to inquire about Watson's identity. During the course of the inquiry that followed, Watson denied being Butler and produced valid identification with his name on it. Nonetheless, the officer proceeded to frisk Watson and, in doing so, uncovered a gun and 27 bags of crack cocaine. Watson was indicted on cocaine and weapons possession charges, and subsequently moved to suppress this physical evidence. After holding an evidentiary hearing, the United States District Court for the Southern District of New York (Scheindlin, *J.*) granted Watson's motion.

In this interlocutory appeal pursuant to 18 U.S.C. § 3731, the Government asks us to reverse the district court's decision on the ground that the two men looked too similar for the officer's mistake to be objectively unreasonable and that, to the extent that the district court took account of the officer's subjective beliefs, the determination of those beliefs was both clearly erroneous and legally irrelevant to the Fourth Amendment analysis. Further, the Government argues that, because the officer suspected Butler, for whom Watson was allegedly confused, of

2

forcible robbery, the search was per se reasonable. For the reasons that follow, we reject the Government's arguments and affirm the order of the district court.

The Factual Dispute

During the suppression hearing in front of the district court, the parties presented conflicting versions of the facts leading up to Watson's arrest. We begin with what is undisputed.

On the morning of April 2, 2013, New York City Police Officers Christopher Vaccaro and Damon Valentino were ordered to locate and arrest Chauncey Butler, a third-degree robbery suspect. The officers were provided with a photograph of Butler from a previous arrest and an investigation card, or "I-Card," that contained "pedigree information." Based on these records, the officers had at their disposal Butler's race, black; height, 5'10" to 6'0" tall; hair color, black; weight, 155 to 180 pounds; age, 19; and home address, on Valentine Avenue in the Bronx. The I-Card also stated that the officers had probable cause to arrest Butler and that he was suspected of violating "PL16005," i.e., New York Penal Law § 160.05, robbery in the third degree. Additionally, approximately one year earlier, Officer Vaccaro had arrested Butler for smoking marijuana in public and had spent 15 to 30 minutes with him during processing.

Officers Vaccaro and Valentino set out to apprehend Butler that afternoon. After patrolling the vicinity of Butler's home without success for ninety minutes, the officers -- at about 5:00 in the afternoon, when it was still light out -- came across Watson and stopped to observe him. Watson is black, 6'2" tall, and was 180 pounds and 25 years old at the time.

At this point, the parties' versions diverge. Although the district court discredited the officers' version in virtually all material respects, we recount it first to provide context and because the Government claims the district court's rejection of the officers' testimony was clearly erroneous.

3

The officers testified that when they first caught sight of Watson, they "believed" he was Butler. At that time, moreover, he was with two other individuals and appeared to be engaged in a drug sale. After seeing a hand signal that they recognized as indicative of a drug transaction, the officers exited the car. Officer Vaccaro then immediately drew his gun and, approaching the three men from behind, "announced himself as a police officer." One of the three men did not obey and either ran or walked away; the officers did not pursue him.

After Officer Vaccaro had made his presence known, Watson, according to Vaccaro's testimony, put his hands on his waistband and began adjusting something. Watson's movements caused his shirt to rise up, and Vaccaro observed what he believed to be the butt of a gun. Upon seeing the gun, Vaccaro holstered his own weapon, grabbed Watson's hands, put him against a fence, and removed the gun from Watson's waist. While checking for a second weapon, Officer Vaccaro found 27 bags of crack cocaine. As this was ongoing, Officer Valentino approached Watson's companion, Theodore Strickland, and placed him in handcuffs as a safety precaution. Both men were then arrested. Officer Vaccaro testified that he was not certain that Watson was not Butler until after Watson was fingerprinted at the station.

Watson's and Strickland's testimony -- which the district court credited and which is binding on this appeal unless clearly erroneous -- sharply conflicted with the officers' testimony. According to Watson's testimony, Watson, after exiting a grocery store, recognized Strickland, who was across the street, as someone from his apartment building, and the two began walking together. There was no third person with them. At that point and for the duration of the events, Watson's gun was clipped between his underwear and his inner pair of sweatpants (he was wearing two pairs), while his jacket, which extended below his waist, was closed, concealing the weapon.

4

As the two men were walking together, they heard Officer Vaccaro identify himself as a police officer. Watson and Strickland turned around, and Watson raised his hands. Officer Vaccaro approached the two without his gun drawn and asked Watson if he was Butler, explaining that Watson matched the description of a robbery suspect. Watson denied being Butler. Officer Vaccaro then asked for identification, and Watson informed Officer Vaccaro that he kept his identification in his jacket pocket. Officer Vaccaro removed Watson's New York State non-driver's license ID and then handed it to Officer Valentino. Officer Vaccaro then asked if Watson had any contraband, to which Watson replied that he did not. Nonetheless, Vaccaro performed a search and found the gun and drugs.

The District Court's Ruling

In an oral ruling delivered from the bench, the district court found that the search was unconstitutional for two reasons. The first -- which we conclude we need not address on this appeal -- is that the officers would have lacked authority to frisk Butler had they actually encountered him because he was only charged with third-degree robbery, which, unlike first- or second-degree robbery, does not involve use of a firearm or deadly weapon. See New York Penal Code § 160.05. This, combined with the fact that "[t]he government offered no evidence that Butler had ever committed a crime using a weapon," led the district court to conclude that Officer Vaccaro had no reasonable basis to believe that Butler, had he actually been present, might have been armed and dangerous.

Second, and of relevance here, the district court determined that, even assuming arguendo that the officers would have had authority to search Butler if they had encountered him, the search of Watson was objectively unreasonable because the officers had no reasonable basis to believe he was Butler and did not in fact believe he was Butler. Furthermore, the officers had no

5

alternative ground to search Watson, for, as the district court found, the officers did not observe any hand signals indicative of a drug transaction; no third person existed or escaped from the scene; and Watson's coat was closed and the butt of his gun was concealed. The Government does not challenge these latter findings, but claims that the district court's determination that, at the time of the search, Vaccaro had no reasonable basis to search Watson was legally erroneous, and that the district court's determination that at the time of the search Vaccaro did not in fact believe Watson was Butler was both irrelevant and clearly erroneous.

In these regards, the central portion of the district court's decision, delivered from the bench, was as follows:

> Vaccaro testified that he saw Watson clearly and still believed that Watson was Butler. Although Vaccaro previously arrested Butler and spent time with him, he admitted that he was not sure whether or not Watson was Butler until after he ran Watson's fingerprints because "on a yearly basis [he] arrests or comes into contact with over a hundred individuals." I do not find this testimony credible. Butler and Watson do not look [a]like. This is evident from a comparison of the photographs of Butler and Watson, as well as my observation of Watson at the hearing. In addition to their different facial features, skin tone, height, and weight, Watson is over five years older than Butler. Vaccaro's generic description of the similarities between Watson and Butler undermines the contention that he reasonably believed them to be the same person.
>
> The government argues that it would have been illogical for the officers to ask for identification prior to searching Watson, but I reach the opposite conclusion: It would have been illogical and imprudent not to ask for identification.
>
> While Vaccaro's belief that Watson was Butler might have been the basis for the stop, it was not the basis for the search.

## Discussion

We review the district court's findings of fact for clear error and its legal determination of lack of reasonable suspicion de novo. United States v. Elmore, 482 F.3d 172, 178 (2d Cir. 2007).

6

Although the district court's opinion is somewhat ambiguous as to whether the initial stop was justified, stating only that Vaccaro's belief that Watson was Butler "might" have been the basis for the stop, the defendant does not claim on this appeal that the officers -- observing Watson briefly at a distance -- lacked reasonable suspicion to believe he was Butler, and so we assume as much for purposes of this appeal. But "once reasonable suspicion exists to detain a traveler, the detention can continue [only] 'for the period of time necessary to either verify or dispel the suspicion.'" United States v. Esieke, 940 F.2d 29, 35 (2d Cir. 1991) (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 544, (1985)). "Authority for the seizure thus ends when tasks tied" to the reason for the stop -- here, determining whether Watson was Butler -- "are -- or reasonably should have been -- completed." See Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015).

The district court specifically discredited Vaccaro's testimony that, even after he got close enough to Watson to observe him clearly, he still was uncertain whether Watson was Butler. More importantly, the district court found, in effect, that no reasonable officer could have so believed by the time of the search. This legal conclusion was based on the factual finding that Watson and Butler simply "do not look [a]like." They have, as the district court found, materially different facial features, skin tones, heights, ages, and so forth. These material differences would have been apparent to any reasonable officer, especially one who, like Vaccaro, had had previous contact with Butler, and would have been further corroborated by Watson's production of identification showing that he was Watson, not Butler.

The district court's effective legal conclusion -- that a reasonable officer, once he had had a chance to view Watson up close, could not have reasonably believed he was Butler -- is fully supported by these factual findings. Nor do we see any basis for concluding that these findings

7

are clearly erroneous. The Government argues, <u>inter alia</u>, that, to the extent that the district court's finding that the two men do not look alike was based on its in-person observation of Watson, we should discredit it because the district court had an extended opportunity to view Watson in a well-lit courtroom, whereas Officer Vaccaro viewed him for only a minute. But the testimony in the record shows that it was light out at the time of the stop, and that, once he exited his car, Officer Vaccaro's view was not impaired. A material difference in skin tone, facial features, and height is not something that takes a long time to process.[2] Thus, we see no reason to conclude that the factual findings of the district court are clearly erroneous.

The rule that the government would have us adopt has the practical effect of permitting police officers to search any black male who is of roughly similar height, age, and skin tone to another black male charged with a crime. Such a rule is unreasonable on its face.

Because the foregoing provides a sufficient basis to uphold the district court's decision, we need not reach the issue of when, if ever, a search can be upheld despite the searching officer's subjective belief that he lacks any factual basis for the search. <u>Cf.</u> <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (<u>except for the facts that he knows</u>) is irrelevant to the existence of probable cause.") (emphasis added); <u>see also</u> <u>Sibron v. New York</u>, 392 U.S. 40, 64 (1968). Furthermore, as previously noted, we need not reach the district court's alternative holding that the third-degree robbery charge would not have justified a search even if Vaccaro had reasonably believed that Watson was Butler.

Accordingly, for the foregoing reasons, the order of the district court is AFFIRMED.

---

[2] Indeed, at the time of the hearing itself, the police officers attempted to justify their search, not so much on any lingering belief that Watson was Butler, but on their claim that they had observed evidence of a drug deal and of possession of a weapon -- assertions that the district court, in findings not here challenged, totally discredited.