# DEVENPECK ET AL. *v.* ALFORD

No. 03–710.   Argued November 8, 2004—Decided December 13, 2004

SCALIA, J., delivered the opinion of the Court, in which all other Members joined, except REHNQUIST, C. J., who took no part in the decision of the case.

*Maureen A. Hart,* Senior Assistant Attorney General of Washington, argued the cause for petitioners. With her on the briefs were *Christine O. Gregoire,* Attorney General, *Robert K. Costello,* Deputy Attorney General, *William Berggren Collins,* Senior Assistant Attorney General, *Michael P. Lynch,* and *Eric A. Mentzer,* Assistant Attorney General.

*Deputy Attorney General Comey* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Acting Solicitor General Clement,* former *Solicitor General Olson, Assistant Attorneys General Keisler* and *Wray, Deputy Solicitor General Dreeben, John P. Elwood, Joel M. Gershowitz,* and *Richard A. Olderman.*

*R. Stuart Phillips* argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging reversal were filed for the State of California et al. by *Bill Lockyer,* Attorney General of California, *Manuel M. Medeiros,* State Solicitor, *Robert R. Anderson,* Chief Assistant Attorney General, *Mary Jo Graves,* Senior Assistant Attorney General, *Janet E. Neeley,* Supervising Deputy Attorney General, and *Lee E. Seale* and *Patrick J. Whalen,* Deputy Attorneys General, by *Anabelle Rodríguez,* Secretary of Justice of Puerto Rico, and by the Attorneys General for their respective States as follows: *Troy King* of Alabama, *M. Jane Brady* of Delaware, *Mark J. Bennett* of Hawaii, *Lisa Madigan* of Illinois, *Steve Carter* of Indiana, *Charles C. Foti, Jr.,* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Michael A. Cox* of Michigan, *Wayne Stenehjem* of North Dakota, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Gerald J. Pappert* of Pennsylvania, *Henry McMaster* of South Carolina, and *Mark L. Shurtleff* of Utah; for the Center for the Community Interest by *Miguel A. Estrada* and *Thomas*

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the question whether an arrest is lawful under the Fourth Amendment when the criminal offense for which there is probable cause to arrest is not "closely related" to the offense stated by the arresting officer at the time of arrest.

## I

## A

On the night of November 22, 1997, a disabled automobile and its passengers were stranded on the shoulder of State Route 16, a divided highway, in Pierce County, Washington. *Alford* v. *Haner*, 333 F. 3d 972, 974 (CA9 2003); App. 94, 98. Respondent Jerome Alford pulled his car off the road behind the disabled vehicle, activating his "wig-wag" headlights (which flash the left and right lights alternately). As he pulled off the road, Officer Joi Haner of the Washington State Patrol, one of the two petitioners here, passed the disabled car from the opposite direction. 333 F. 3d, at 974. He turned around to check on the motorists at the first opportunity, and when he arrived, respondent, who had begun helping the motorists change a flat tire, hurried back to his car and drove away. *Ibid.* The stranded motorists asked Haner if respondent was a "cop"; they said that respondent's statements, and his flashing, wig-wag headlights, had given them that impression. *Ibid.;* App. 96. They also informed Haner that as respondent hurried off he left his flashlight behind. *Id.,* at 97.

On the basis of this information, Haner radioed his supervisor, Sergeant Gerald Devenpeck, the other petitioner here, that he was concerned respondent was an "impersonator"

H. *Dupree, Jr.;* and for the National League of Cities et al. by *Richard Ruda* and *Andrew J. Pincus.*

*Jonathan D. Hacker* and *Pamela Harris* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

or "wannabe cop." *Id.*, at 97–98. He pursued respondent's vehicle and pulled it over. 333 F. 3d, at 975. Through the passenger-side window, Haner observed that respondent was listening to the Kitsap County Sheriff's Office police frequency on a special radio, and that handcuffs and a hand-held police scanner were in the car. *Ibid.* These facts bolstered Haner's suspicion that respondent was impersonating a police officer. App. 106, 107. Haner thought, moreover, that respondent seemed untruthful and evasive: He told Haner that he had worked previously for the "State Patrol," but under further questioning, claimed instead to have worked in law enforcement in Texas and at a shipyard. *Ibid.* He claimed that his flashing headlights were part of a recently installed car-alarm system, and acted as though he was unable to trigger the system; but during these feigned efforts Haner noticed that respondent avoided pushing a button near his knee, which Haner suspected (correctly) to be the switch for the lights. 333 F. 3d, at 975; App. 108.

Sergeant Devenpeck arrived on the scene a short time later. After Haner informed Devenpeck of the basis for his belief that respondent had been impersonating a police officer, *id.*, at 110, Devenpeck approached respondent's vehicle and inquired about the wig-wag headlights, 333 F. 3d, at 975. As before, respondent said that the headlights were part of his alarm system and that he did not know how to activate them. App. 52, 138–139. Like Haner, Devenpeck was skeptical of respondent's answers. In the course of his questioning, Devenpeck noticed a tape recorder on the passenger seat of respondent's car, with the play and record buttons depressed. 333 F. 3d, at 975. He ordered Haner to remove respondent from the car, played the recorded tape, and found that respondent had been recording his conversations with the officers. Devenpeck informed respondent that he was under arrest for a violation of the Washington Privacy Act, Wash. Rev. Code § 9.73.030 (1994). 333 F. 3d, at 975; App. 144–145. Respondent protested that a State Court-of-

Appeals decision, a copy of which he claimed was in his glove compartment, permitted him to record roadside conversations with police officers. 333 F. 3d, at 975; App. 42, 67–68. Devenpeck returned to his car, reviewed the language of the Privacy Act, and attempted unsuccessfully to reach a prosecutor to confirm that the arrest was lawful. *Id.*, at 151–154. Believing that the text of the Privacy Act confirmed that respondent's recording was unlawful,[1] he directed Officer Haner to take respondent to jail. *Id.*, at 154.

A short time later, Devenpeck reached by phone Mark Lindquist, a deputy county prosecutor, to whom he recounted the events leading to · respondent's arrest. 333 F. 3d, at 975. The two discussed a series of possible criminal offenses, including violation of the Privacy Act, impersonating a police officer, and making a false representation to an officer. App. 177–178. Lindquist advised that there was "clearly probable cause," *id.*, at 179, and suggested that respondent also be charged with "obstructing a public servant" "based on the runaround [he] gave [Devenpeck]," *id.*, at 157. Devenpeck rejected this suggestion, explaining that the State Patrol does not, as a matter of policy, "stack charges" against an arrestee. *Id.*, at 157–158.

At booking, Haner charged respondent with violating the State Privacy Act, *id.*, at 32–33, and issued a ticket to respondent for his flashing headlights under Wash. Rev. Code § 46.37.280(3) (1994), App. 24–25. Under state law, respondent could be detained on the latter offense only for the period of time "reasonably necessary" to issue a citation.

---

[1] The relevant provision of the Washington Privacy Act states:

"Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any . . . [p]rivate conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation." Wash. Rev. Code § 9.73.030(1)(b) (1994).

§ 46.64.015. The state trial court subsequently dismissed both charges. App. 10, 29.

B

Respondent filed suit against petitioners in Federal District Court. He asserted a federal cause of action under Rev. Stat. § 1979, 42 U. S. C. § 1983, and a state cause of action for unlawful arrest and imprisonment, both claims resting upon the allegation that petitioners arrested him without probable cause in violation of the Fourth and Fourteenth Amendments. 333 F. 3d, at 975. The District Court denied petitioners' motion for summary judgment on grounds of qualified immunity, and the case proceeded to trial. *Alford* v. *Washington State Police,* Case No. C99–5586RJB (WD Wash., Nov. 30, 2000), App. to Pet. for Cert. 40a. The jury was instructed that, for respondent to prevail on either his federal- or state-law claim, he must demonstrate that petitioners arrested him without probable cause, App. 199–201; and that probable cause exists "if the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to conclude that the suspect has committed, is committing, or was about to commit a crime," *id.,* at 201. The jury was also instructed that, at the time of respondent's arrest, a State Court-of-Appeals decision, *State* v. *Flora,* 68 Wash. App. 802, 845 P. 2d 1355 (1992), had clearly established that respondent's taping of petitioners was not a crime, App. 202. And the jury was directed that it must find for petitioners if a reasonable officer in the same circumstances would have believed respondent's detention was lawful. *Id.,* at 200. Respondent did not object to any of these instructions. The jury returned a unanimous verdict in favor of petitioners. 333 F. 3d, at 975. The District Court denied respondent's motion for judgment as a matter of law or, in the alternative, a new trial, and respondent appealed. *Ibid.;* App. to Pet. for Cert. 25a.

A divided panel of the Court of Appeals for the Ninth Circuit reversed, finding "no evidence to support the jury's verdict," 333 F. 3d, at 975. The majority concluded that petitioners could not have had probable cause to arrest because they cited only the Privacy Act charge and "[t]ape recording officers conducting a traffic stop is not a crime in Washington." *Id.*, at 976. The majority rejected petitioners' claim that probable cause existed to arrest respondent for the offenses of impersonating a law-enforcement officer, Wash. Rev. Code § 9A.60.040(3) (1994), and obstructing a law-enforcement officer, § 9A.76.020, because, it said, those offenses were not "closely related" to the offense invoked by Devenpeck as he took respondent into custody, 333 F. 3d, at 976–977. The majority also held that there was no evidence to support petitioners' claim of qualified immunity, since, given the Washington Court of Appeals' decision in *Flora,* "no objectively reasonable officer could have concluded that arresting [respondent] for taping the traffic stop was permissible," 333 F. 3d, at 979. Judge Gould dissented on the ground that it was objectively reasonable for petitioners to believe that respondent had violated the Privacy Act. See *id.*, at 980. We granted certiorari. 541 U. S. 987 (2004).

## II

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. See *United States* v. *Watson,* 423 U. S. 411, 417–424 (1976); *Brinegar* v. *United States,* 338 U. S. 160, 175–176 (1949). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Maryland* v. *Pringle,* 540 U. S. 366, 371 (2003). In

this case, the Court of Appeals held that the probable-cause inquiry is further confined to the known facts bearing upon the offense actually invoked at the time of arrest, and that (in addition) the offense supported by these known facts must be "closely related" to the offense that the officer invoked. 333 F. 3d, at 976. We find no basis in precedent or reason for this limitation.

Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. See *Whren* v. *United States*, 517 U. S. 806, 812–813 (1996) (reviewing cases); *Arkansas* v. *Sullivan*, 532 U. S. 769 (2001) *(per curiam)*. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, " 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' " *Whren, supra,* at 813 (quoting *Scott* v. *United States*, 436 U. S. 128, 138 (1978)). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren, supra,* at 814. "[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton* v. *California*, 496 U. S. 128, 138 (1990).

The rule that the offense establishing probable cause must be "closely related" to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest is inconsistent with this precedent.[2] Such a rule

---

[2] At least one Court of Appeals has adopted a variation of the "closely related offense" rule which looks not to the offense stated by the officer at the time of arrest, but to the offense given by the officer at booking. See *Gassner* v. *Garland*, 864 F. 2d 394, 398 (CA5 1989); but see *Sheehy* v.

154

makes the lawfulness of an arrest turn upon the motivation of the arresting officer—eliminating, as validating probable cause, facts that played no part in the officer's expressed subjective reason for making the arrest, and offenses that are not "closely related" to that subjective reason. See, *e. g.,* *Sheehy* v. *Plymouth,* 191 F. 3d 15, 20 (CA1 1999); *Trejo* v. *Perez,* 693 F. 2d 482, 485–486 (CA5 1982). This means that the constitutionality of an arrest under a given set of known facts will "vary from place to place and from time to time," *Whren, supra,* at 815, depending on whether the arresting officer states the reason for the detention and, if so, whether he correctly identifies a general class of offense for which probable cause exists. An arrest made by a knowledgeable, veteran officer would be valid, whereas an arrest made by a rookie *in precisely the same circumstances* would not. We see no reason to ascribe to the Fourth Amendment such arbitrarily variable protection.

Those who support the "closely related offense" rule say that, although it is aimed at rooting out the subjective vice of arrests made for the wrong reason, it does so by objective means—that is, by reference to the arresting officer's statement of his reason. The same argument was made in *Whren, supra,* in defense of the proposed rule that a traffic stop can be declared invalid for malicious motivation when it is justified only by an offense which standard police practice does not make the basis for a stop. That rule, it was said, "attempt[s] to root out subjective vices through objective means," *id.,* at 814. We rejected the argument there, and we reject it again here. Subjective intent of the arresting officer, *however* it is determined (and of course subjective intent is *always* determined by objective means), is simply

*Plymouth,* 191 F. 3d 15, 20 (CA1 1999) (holding that an arrest *cannot* be justified by an offense given at booking when the offense asserted by the officer at the time of arrest was not closely related). Most of our discussion in this opinion, and our conclusion of invalidity, applies to this variation as well.

no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest.

Finally, the "closely related offense" rule is condemned by its perverse consequences. While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required.[3] Hence, the predictable consequence of a rule limiting the probable-cause inquiry to offenses closely related to (and supported by the same facts as) those identified by the arresting officer is not, as respondent contends, that officers will cease making sham arrests on the hope that such arrests will later be validated, but rather that officers will cease providing reasons for arrest. And even if this option were to be foreclosed by adoption of a statutory or constitutional requirement, officers would simply give every reason for which probable cause could conceivably exist.

The facts of this case exemplify the arbitrary consequences of a "closely related offense" rule. Officer Haner's initial stop of respondent was motivated entirely by the suspicion that he was impersonating a police officer. App. 106. Before pulling respondent over, Haner indicated by radio that this was his concern; during the stop, Haner asked respondent whether he was actively employed in law enforcement and why his car had wig-wag headlights; and when Sergeant Devenpeck arrived, Haner told him why he thought respondent was a "wannabe cop," id., at 98. In addition, in the course of interrogating respondent, both officers became convinced that he was not answering their questions truthfully and, with respect to the wig-wag headlights, that he

---

[3] Even absent a requirement that an individual be informed of the reason for arrest when he is taken into custody, he will not be left to wonder for long. "[P]ersons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause." *County of Riverside* v. *McLaughlin*, 500 U. S. 44, 53 (1991).

was affirmatively trying to mislead them.   Only after these suspicions had developed did Devenpeck discover the taping, place respondent under arrest, and offer the Privacy Act as the reason.   Because of the "closely related offense" rule, Devenpeck's actions render irrelevant both Haner's developed suspicions that respondent was impersonating a police officer and the officers' shared belief that respondent obstructed their investigation.   The outcome under the "closely related offense" rule might well have been different if Haner, rather than Devenpeck, had made the arrest, on the stated basis of *his* suspicions; if Devenpeck had not abided the county's policy against stacking charges; or if either officer had made the arrest without stating the grounds. We have consistently rejected a conception of the Fourth Amendment that would produce such haphazard results. See *Whren*, 517 U. S., at 815.

*       *       *

Respondent contended below that petitioners lacked probable cause to arrest him for obstructing a law-enforcement officer or for impersonating a law-enforcement officer.   Because the Court of Appeals held that those offenses were legally irrelevant, it did not decide the question.   We decline to engage in this inquiry for the first time here.   Accordingly, we reverse the judgment of the Ninth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

THE CHIEF JUSTICE took no part in the decision of this case.