Justice Ginsburg,
concurring in the judgment.
I find in the historical record more support for Moore’s position than the Court does, ante, at 168-171.[1] Further, *179 our decision in United States v. Di Re, 332 U. S. 581, 587-590 (1948), requiring suppression of evidence gained in a search incident to an unlawful arrest, seems to me pinned to the Fourth Amendment and not to our “supervisory power,” ante, at 172.[2] And I am aware of no “long line of cases” holding that, regardless of state law, probable cause renders every warrantless arrest for crimes committed in the presence of an arresting officer “constitutionally reasonable,” ante, at 171.[3]
*180 I agree with the Court’s conclusion and its reasoning, however, to this extent. In line with the Court’s decision in At-water v. Lago Vista, 532 U. S. 318, 354 (2001), Virginia could have made driving on a suspended license an arrestable offense. The Commonwealth chose not to do so. Moore asks us to credit Virginia law on a police officer’s arrest authority, but only in part. He emphasizes Virginia’s classification of driving on a suspended license as a nonarrestable misdemeanor. Moore would have us ignore, however, the limited consequences Virginia attaches to a police officer’s failure to follow the Commonwealth’s summons-only instruction. For such an infraction, the officer may be disciplined and the person arrested may bring a tort suit against the officer. But Virginia law does not demand the suppression of evidence seized by an officer who arrests when he should have issued a summons.
The Fourth Amendment, today’s decision holds, does not put States to an all-or-nothing choice in this regard. A State may accord protection against arrest beyond what the Fourth Amendment requires, yet restrict the remedies available when police deny to persons they apprehend the extra protection state law orders. See ante, at 173-174. Because I agree that the arrest and search Moore challenges violated Virginia law, but did not violate the Fourth Amendment, I join the Court’s judgment.

 Under the common law prevailing at the end of the 19th century, it appears that arrests for minor misdemeanors, typically involving no breach of the peace, depended on statutory authorization. See Wilgus, Arrest Without a Warrant, 22 Mich. L. Rev. 541, 674 (1924) (“Neither [an officer] nor [a citizen], without statutory authority may arrest [a defendant] for... a misdemeanor which is not a [breach of the peace]” (emphasis added)); 9 Halsbury, Laws of England §§ 608, 611-612, 615 (1909). See also Atwater v. Lago Vista, 532 U. S. 318, 342-345 (2001) (noting 19th-century decisions upholding statutes extending warrantless arrest authority to misdemeanors, other than breaches of the peace, committed in a police officer’s presence); Wilgus, supra, at 551 (warrantless misdemeanor *179 arrests “made under authority of a statute must conform strictly to its provisions; otherwise they will not be valid, and the one arresting becomes a trespasser”).
Noting colonial hostility to general warrants and writs of assistance, the Court observes that “founding-era citizens were skeptical of using the rules for search and seizure set by government actors as the index of reasonableness.” Ante, at 169. The practices resisted by the citizenry, however, served to invade the people’s privacy, not to shield it.

 The Court attributes Di Re’s suppression ruling to our “supervisory power,” not to “a rule we derived from the Constitution.” Ante, at 172. Justice Jackson, author of Di Re, however, did not mention “supervisory power,” placed the decision in a Fourth Amendment context, see 332 U. S., at 585, and ended with a reminder that “our Constitution [places] obstacles in the way of a too permeating police surveillance,” id., at 595. The Di Re opinion, I recognize, is somewhat difficult to parse. Allied to Di Re’s Fourth Amendment instruction, the Court announced a choice-of-law rule not derived from the Constitution: When a state officer makes a warrant-less arrest for a federal crime, federal arrest law governs the legality of the arrest; but absent a federal statute in point, “the law of the state where an arrest without warrant takes place determines its validity.” Id., at 588-589.

 Demonstrative of the “long line,” the Court lists Atwater, 532 U. S., at 354, Devenpeck v. Alford, 543 U. S. 146, 152 (2004), Brinegar v. United, States, 338 U. S. 160, 164, 170, 175-176 (1949), and Gerstein v. Pugh, 420 U. S. 103, 111 (1975). Ante, at 171. But in all of these cases, unlike Moore’s ease, state law authorized the arrests. The warrantless misdemeanor arrest in Atwater was authorized by Tex. Transp. Code Ann. §543.001 (West 1999). See 532 U. S., at 323. The warrantless misdemeanor arrest in Devenpeck was authorized by Wash. Rev. Code Ann. § 10.31.100 (Michie 1997). In Brinegar, whether the warrantless arrest was for a misdemeanor or a felony, it was authorized by state law. See *180 Okla. St at., Tit. 22, §196 (1941). Gerstein involved a challenge to the State’s preliminary hearing procedures, not to the validity of a particular arrest. See 420 U. S., at 105. The record does not indicate whether the respondents’ offenses were committed in the officer’s presence or whether the arrests were made under warrant. See id., at 105, n. 1. But it does indicate that the crimes involved were serious felonies, see ibid., and state law authorized arrest without warrant when “[a] felony has been committed and [the officer] reasonably believes that the [apprehended] person committed it,” Fla. Stat. Ann. § 901.15(2) (West Supp. 1973).