[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12001
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00338-MCR-CJK


CHRISTINA D. DI PRETA,

Plaintiff-Appellant,

versus

TONY R. TAYLOR,
JOSHUA R. GRACE,
RAYMOND GAUTSCHY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 11, 2017)


Before HULL, WILSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Christina Di Preta appeals the district court's grant of summary judgment in favor of Defendants Crestview Police Department ("CPD") Chief of Police Tony Taylor, in his official capacity, and CPD Officers Joshua Grace and Raymond Gautschy, each in his individual capacity. Plaintiff complains that she was falsely arrested in violation of the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, and Florida law.[*] No reversible error has been shown; we affirm.

This appeal arises out of a domestic dispute between Plaintiff, Plaintiff's estranged husband (Jeff Pedersen) and Pedersen's girlfriend (Brittany Adams) during the early morning hours of 6 May 2013. Plaintiff and Pedersen had agreed informally that Pedersen would keep the couple's four-year-old daughter on days when Plaintiff worked. According to the couple's agreement, Pedersen was supposed to pick their daughter up on the evening of 5 May so that Plaintiff could report to work at 5:30am the next morning. When Pedersen failed to show up, Plaintiff began calling Pedersen. At one point, Pedersen said he was on his way, but he never arrived. After several more phone calls, Pedersen told Plaintiff to drop their daughter off at his house (the couple's former marital home).

---

[*] Plaintiff has abandoned expressly her claim for malicious prosecution against Chief Taylor in his official capacity.

When Plaintiff arrived at Pedersen's house, it was past midnight. Leaving her sleeping daughter in her truck, Plaintiff walked to the front door of the house. Plaintiff could see Pedersen and Adams sitting just inside the doorway, but they refused to open the door. Plaintiff began yelling at Pedersen and Adams to open the door. When that proved unsuccessful, Plaintiff returned to her truck and called the police for assistance with the custody transfer "because I didn't want there to be any sort of conflict or anything bad to happen." Meanwhile, Pedersen also called the police for assistance explaining that his wife was "acting crazy" and that he "wanted her to leave."

In response to the two 911 calls, Defendant Officers Grace and Gautschy were dispatched to Pedersen's house. Officer Gautschy spoke with Pedersen on the front porch. Pedersen explained that Plaintiff was dropping off their daughter but that he was concerned that an argument might ensue and that things might "get out of hand," given Plaintiff's dislike of Adams. Meanwhile, Plaintiff -- who was in her truck -- explained calmly to Officer Grace that she needed help transferring custody of her daughter to Pedersen.

After confirming that Pedersen was willing to take custody of his daughter, Officer Gautschy motioned for Plaintiff and for Officer Grace to come to the house. Plaintiff -- accompanied by Officer Grace -- carried her daughter to the front door. Upon reaching the house, Plaintiff then threw her daughter's overnight

3

bag through the open door.  Plaintiff -- suspecting Pedersen was intoxicated -- also asked Pedersen whether he had been drinking.  At that point, Plaintiff and Adams began yelling at each other and using profanity.  Briefly stated, Plaintiff then demanded that Adams get out of her house, shouted that Adams did not belong there, and said that Plaintiff and Pedersen were still legally married.

Plaintiff denies making threatening movements toward Adams during this exchange.  Plaintiff did, however, testify that -- as she and Adams were yelling at each other -- Plaintiff approached the spot where Adams was standing.  When Plaintiff was within a couple of steps of Adams, Officers Grace and Gautschy each grabbed one of Plaintiff's arms and pulled her back away from Adams.  A brief struggle ensued, as Plaintiff stumbled on some rocks and Defendant Officers attempted to keep Plaintiff from falling.  Once Plaintiff regained her balance, Plaintiff calmed down; and Defendant Officers released their grip on her.  Plaintiff then returned to her truck and prepared to drive away.

Meanwhile, Adams told Officer Grace that she wanted to press charges against Plaintiff for assault.  Officer Grace instructed Officer Gautschy -- who had followed Plaintiff to her truck -- to place Plaintiff under arrest.  Plaintiff was removed from her truck and handcuffed without incident.

Plaintiff was later charged with resisting arrest with violence, battery on a law enforcement officer, and with misdemeanor assault. The charges were nolle prossed. Plaintiff then filed this civil action.

We review de novo the district court's grant of summary judgment, viewing all evidence -- as we have in stating the "facts" -- and drawing all reasonable inferences in favor of the non-moving party. Holloman v. Mail-Well Corp., 443 F.3d 832, 836-37 (11th Cir. 2006). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Broadly speaking, a warrantless arrest made without probable cause violates the Fourth Amendment. See Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). An officer has probable cause to arrest when, "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [accused] had committed or was committing an offense." Beck v. Ohio, 85 S. Ct. 223, 225 (1964). "In determining whether probable cause exists, we deal with probabilities which are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)

5

(quotations and alterations omitted).  "[T]he standard for determining whether probable cause exists is the same under Florida and federal law."  Id.

"Whether an officer possesses probable cause . . . depends on the elements of the alleged crime and operative fact pattern."  Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010).  An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  Devenpeck v. Alford, 125 S. Ct. 588, 594 (2004).

Under Florida law, "[a]n 'assault' is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent."  Fla. Stat. § 784.011.  For purposes of proving an assault, "there must be some overt act sufficient to demonstrate a threat directed at the person placed in fear."  Droke v. Andino, 145 So. 3d 221, 221 (Fla. Dist. Ct. App. 2014).

Viewed in the light most favorable to Plaintiff, probable cause existed to arrest Plaintiff: an arrest for assault against Adams.  Defendant Officers responded -- in the middle of the night -- to two separate 911 calls for assistance with a domestic dispute.  Before the arrest, both Plaintiff and Pedersen reported that they believed police intervention was necessary to avoid a potential altercation.  Pedersen also told Officer Gautschy that Plaintiff and Adams had a volatile

6

relationship.  Upon reaching the house -- and in the presence of both officers -- Plaintiff threw immediately her daughter's bag into the house, accused Pedersen of drinking, and began yelling obscenities at Adams, telling Adams she needed to leave the house.  At the same time, Plaintiff also moved physically toward Adams, causing both Defendant Officers simultaneously to grab Plaintiff and to pull her back.  In the context of the facts and circumstances within Defendant Officers' knowledge, a prudent person would have believed (1) that Plaintiff had -- by advancing toward Adams while demanding that Adams leave the house -- engaged in an overt act constituting a threat of violence to Adams; (2) that Plaintiff had the ability to carry out that threat given her close proximity to Adams; and (3) that Plaintiff's conduct created a well-founded fear that violence was imminent.  See Fla. Stat. § 784.011; Droke, 145 So. 3d at 221.

Because probable cause thus existed to arrest Plaintiff for assault, Defendant Officers were entitled to summary judgment on Plaintiff's claims for false arrest under both federal and state law.  See Rankin, 133 F. 3d at 1436.

AFFIRMED.

7