*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

V

JENNIFER MARIE HAMMERLUND,

        Defendant-Appellee.

FOR PUBLICATION
June 17, 2021

No. 355120
Kent Circuit Court
LC No. 15-009717-FH

Before: BOONSTRA, P.J., and MARKEY and SERVITTO, JJ.

BOONSTRA, P.J. (*dissenting*).

I respectfully dissent. I do so not so much out of disagreement with the majority's legal analysis, but rather because, with due respect to our Supreme Court, it in my judgment overstepped in this case, and the majority—as well as the trial court—not surprisingly felt constrained as a result. Should this matter make its way back up to our Supreme Court, I would encourage the Court to rectify matters by vacating footnote 5 of its opinion in this case and by again remanding the case to the trial court for its determination, in the first instance, of issues that neither it nor this Court have ever decided, but that appear to have been prematurely decided by the Supreme Court, albeit in passing in footnote 5, without ever having been previously raised in or decided by any court.

A brief procedural recap. The trial court initially denied defendant's motion to suppress evidence and to dismiss the charges against her. The case proceeded to trial. A jury rendered a guilty verdict on charges of operating under the influence of intoxicants (third offense) (OUI), MCL 257.625, and failure to report an accident resulting in damage to fixtures, MCL 257.621. This Court affirmed.[1] Our Supreme Court scheduled oral argument on defendant's application for leave to appeal. It further directed the parties to file supplemental briefs addressing "whether it is constitutionally permissible for a police officer to compel, coerce, or otherwise entice a

---

[1] *People v Hammerlund*, unpublished opinion of the Court of Appeals, issued October 17, 2017 (Docket No. 333827).

person located in his or her home to enter a public place to perform a warrantless arrest." And it invited briefs amicus curiae.[2]

Defendant framed the issue before the Supreme Court in its application for leave to appeal as follows:

> BECAUSE OFFICER STAMAN UNLAWFULLY ENTERED DEFENDANT-APPELLANT JENNIFER HAMMERLUND'S HOME AND ARRESTED HER WITHOUT A WARRANT WHEN HE GRABBED HER ARM WHILE SHE ATTEMPTED TO RETRIEVE HER IDENTIFICATION, DID THE CIRCUIT COURT ERR BY DENYING MS. HAMMERLUND'S MOTION TO SUPPRESS?

The prosecution responded to the application by incorporating the arguments it presented in its brief on appeal to this Court. At the Supreme Court's direction, the parties filed supplemental briefs (including a reply brief filed by defendant) addressing the issue raised by the Supreme Court in its May 30 2018 order. At the Supreme Court's invitation, the Prosecuting Attorneys Association of Michigan field a brief amicus curiae. The Supreme Court held oral argument on the application on April 24, 2019.

On July 23, 2019, the Supreme Court issued its opinion and order reversing the judgment of the Court of Appeals and remanding to the trial court "for further proceedings not inconsistent with this opinion." *People v Hammerlund*, 504 Mich 442, 446; 939 NW2d 129 (2019).[3] It noted that it was not deciding the issue that it has asked the parties to address by way of supplemental briefs, but that its direction to the parties to address that issue "does not mean that we are imprudently or incorrectly deciding the very legal issues decided by the trial court and the Court of Appeals and briefed by the parties on appeal to this Court." *Id*. at 450 n 2.

That leads me to consider what legal issues were in fact decided by the trial court and the Court of Appeals and briefed by the parties. As this Court previously described the trial court's initial ruling, "[t]he trial court issued a written opinion denying defendant's motion [to suppress and dismiss], ruling that 'there was a constitutionally valid arrest and defendant's attempt to flee from that arrest did not render [the arrest] unconstitutional.' "[4] More specifically, the trial court assumed that the arrest on the misdemeanor failure to report charge *did* violate Michigan *statutory* law, but found that the statute did not provide a basis for applying the exclusionary rule as a matter of *constitutional* law.

---

[2] *People v Hammerlund*, unpublished order of the Supreme Court, entered May 30, 2018 (Docket No. 156901).

[3] Justice ZAHRA, joined by Justice MARKMAN, dissented. *Hammerlund*, 504 Mich at 463 (ZAHRA, J. dissenting).

[4] *People v Hammerlund*, unpublished opinion of the Court of Appeals, issued October17, 2017 (Docket No. 333827) at *2.

This Court affirmed. It agreed with the trial court that MCL 764.15[5] does not create a remedy of exclusion. It further agreed with the trial court that although the misdemeanor arrest was statutorily infirm, it was "constitutionally valid" because "[a] warrantless arrest does not offend the constitution when 'probable cause to arrest existed at the moment the arrest was made by the officer,' " and because "defendant does not dispute there was probable cause for the arrest."[6] This Court further clarified that its probable cause assessment—like the trial court's—related solely to the misdemeanor charge of failure to report an accident resulting in damage to fixtures, MCL 257.621.[7] This Court—like the trial court—offered no analysis of whether there was probable cause for an arrest relating to the OUI charge, MCL 257.625.

Fast-forward now to defendant's application for leave to appeal to our Supreme Court. As noted, the issue raised by defendant in her application to the Supreme Court focused on the propriety of the police officer's conduct in entering her home after grabbing her arm as she reached toward him (while he was standing outside her home) and then arresting her in her home without a warrant. Defendant did not raise the issue of whether there was probable cause for an arrest relating to the OUI charge or how a determination of that issue would affect the analysis of the constitutionality of the arrest for purposes of applying (or not) the exclusionary rule with respect to evidence obtained after the arrest. And, from my review of the record, the only mention of the issue in all of the briefing before the Supreme Court was made by the prosecution, as an aside in a footnote, after noting that defendant did not contest the fact that there was probable cause to arrest defendant on the misdemeanor failure to report charge:

> Furthermore, Officer Staman testified that he observed Defendant who appeared to be intoxicated (Tr I, 108-109). Given the short passage of time between when Officer Staman responded to the scene of the accident and his interaction with Defendant, and Defendant's admission that she had been operating the vehicle, there was also sufficient probable cause to arrest Defendant for operating a motor

---

[5] MCL 764.15(1)(d) provides that a peace officer may make a warrantless arrest if the officer "has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days . . . has been committed and reasonable cause to believe the person committed it." *Id*. The offense of failure to report an accident resulting in damage to fixtures, MCL 257.621, of which defendant was convicted, is a misdemeanor punishable by "imprisonment for not more than 90 days[.]" MCL 257.901(2).

[6] *Hammerlund*, unpublished opinion of the Court of Appeals, issued October17, 2017 (Docket No. 333827) at *2.

[7] *Hammerlund*, unpublished opinion of the Court of Appeals, issued October17, 2017 (Docket No. 333827) at *2, n 3 (While not in dispute, there was sufficient evidence in the record to demonstrate probable cause for an arrest. Officer Staman discovered an abandoned car registered to defendant that showed signs it had been the cause of damage to public road fixtures. Subsequently, defendant made pre-arrest statements that she was driving and that she had left the scene of the accident without reporting the damage.").

vehicle while intoxicated, which at best is a 93-day misdemeanor (MCL 257.625). [Prosecution's brief at 8, n 48].

Further, from my review of the oral arguments before the Supreme Court on defendant's application for leave to appeal, not a single word was uttered on the subject by counsel for either party or by any of the Justices.

Yet, the Supreme Court, in its July 23, 2019 opinion, while devoting the lion's share of its analysis to the issue raised by defendant in its application (i.e., the propriety of the officer's entry into defendant's home under the particular factual circumstances presented), crossed beyond the issues raised by defendant and the issues actually decided in the trial court and in this Court to address and seemingly decide—in the first instance—whether there was probable cause for arrest with respect to the OUI charge.[8] Indeed, both the Supreme Court majority and the Supreme Court dissent addressed that issue (albeit while reaching different conclusions).[9] The dissent would have held that there was probable cause for an OUI arrest (and that there therefore was no statutory violation in that regard[10]):

> Regardless of the propriety of an arrest for defendant's failure to report an accident causing damage to fixtures, Officer Staman *also* had probable cause to initiate an arrest for operating a vehicle under the influence of intoxicating liquor, third offense, in violation of MCL 257.625(9)(c). The felony information and affidavit of probable cause in the record state that defendant had been convicted of operating while intoxicated twice in the past—once in 1998 and once in 2006. Officer Staman testified at the evidentiary hearing that when he was dispatched to the scene of the accident, he found defendant's vehicle abandoned, facing the wrong direction on an exit ramp from US-131, and showing signs that it had struck both of the protective barriers on the exit ramp. Defendant, herself, did not report the accident to the police. After Officer Staman arrived at defendant's home, he observed

---

[8] Generally, an appellate court will not decide an issue that the trial court was not presented with and did not decide. *People v Hamacher*, 432 Mich 157, 168; 438 NW2d 43 (1989). Moreover, when our Supreme Court grants a party's application for leave to appeal, the issues to be considered by the Court are generally limited to all or some of the issues raised in the application. See *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994); see also MCR 7.305(H)(4)(a).

[9] The Supreme Court majority and the Supreme Court dissent agreed that there was probable cause for arrest relating to the misdemeanor failure to report charge (and that defendant did not contend otherwise), but differed about whether the statutory violation (in making a warrantless arrest for a 90-day misdemeanor not committed in the officer's presence) was appropriately remedied as a matter of constitutional law by the application of the exclusionary rule. *Hammerlund*, 504 Mich at 453-462 (opinion of the Court by CAVANAGH, J.) and *id*. at 473-483 (ZAHRA, J., dissenting).

[10] MCL 764.15(b) and (c) permit a police offer to arrest a person without a warrant if a felony has been committed and the officer has actual knowledge, or the probable cause to believe, that the person committed it. MCL 764.15(h) specifically authorizes a police offer to arrest a person if the officer has probable cause to suspect that the person had been operated a motor vehicle while intoxicated when that vehicle was involved in an accident.

-4-

defendant leaning against a wall as if to maintain balance. He also noticed that her speech was slurred prior to transporting her to the police station. A violation of MCL 257.625(9)(c) would constitute a felony. Thus, Officer Staman was statutorily authorized under MCL 764.15(1)(b) and (h) to arrest defendant, notwithstanding his mistaken belief that failure to report an accident to fixtures was a 93-day misdemeanor. [*Hammerlund*, 504 Mich at 476-479 (Zahra, J. dissenting) (footnotes omitted)].

The Supreme Court majority also addressed the issue, albeit only in passing in footnote 5, a footnote that initially characterized the lower court record as vague and inadequate with respect to that issue, but which then seemingly reached a conclusion contrary to that of the dissent notwithstanding the majority's own characterizations of the deficiencies of the lower court record:

The dissent concludes that Officer Staman also possessed probable cause to arrest defendant for OWI-3d because he observed that defendant was "leaning against a wall as if to maintain balance," "that her speech was slurred prior to transporting her to the police station," and that she had previous OWI convictions. There are multiple problems with this conclusion. First, that defendant was slurring her speech and unstable on her feet *could possibly provide probable cause* to believe that she was under the influence when the crash occurred; however, considering the fact that defendant was in an accident in which her head collided with a steering wheel and the intervening time between the accident and the police contact, *without more concrete facts* it is a stretch to conclude that any unsteadiness or warped speech stemmed from intoxication that was present at the time she operated the vehicle. Second, *the record is vague* about when exactly Officer Staman noticed defendant slurring her speech, and it is unclear whether it was while she remained inside her home or only after she was arrested. Third, relatedly, *there is nothing in the record* to indicate that Officer Staman was aware of defendant's prior OWI convictions before he made the arrest. The dissent speculates that Officer Staman "may well have been aware of" the prior convictions, but cites nothing in the record that supports such a statement other than the fact that OWI convictions are reported to the secretary of state under MCL 257.625(21)(a).

Further, what Officer Staman observed or discovered *after* the arrest is not relevant to whether the officer had probable cause to arrest in the first place. Probable cause to arrest exists where the facts and circumstances *known* to the officer would warrant a person of reasonable caution to believe that the offense was committed by the suspect. *Champion*, 452 Mich. at 115, 549 N.W.2d 849. The dissent's reliance on *Devenpeck v. Alford*, 543 U.S. 146, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004), is misplaced. *Devenpeck*, as the dissent acknowledges, states that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the *known* facts provide probable cause." *Id.* at 153, 125 S. Ct. 588. *As we have discussed*, the facts that were *known* to Officer Staman at the time of the arrest *were not sufficient to establish probable cause for OWI* or any other identified felony. The dissent's position would allow the police to retroactively manufacture probable cause where none existed at the time the arrest was made. *Most important, however, is that even if we were to conclude that the officer*

*possessed probable cause to arrest defendant for OWI, it would not render this a constitutional arrest because there was no legitimate hot pursuit.* [*Hammerlund*, 504 Mich at 453 n 5 (first through fourth emphasis added; fifth, sixth, and seventh emphasis in original; eighth and ninth emphasis added).)].

In my judgment, the Supreme Court jumped the gun in deciding this issue without the benefit of a fully-developed lower court record and without the benefit of a ruling by the trial court (or by this Court) on that issue. Neither of the lower courts ever opined on whether there was probable cause for an OUI arrest, or whether the exigent circumstances doctrine would apply with respect to the OUI charge, such that the officer's entry into defendant's home to effectuate an OUI arrest would be constitutionally valid. Instead, by bypassing the lower courts and the development of a factual record that would have enabled the lower courts to have opined on those issues, the Supreme Court jumped to a conclusion that was devoid of the requisite factual or legal analysis.

I note, for example, that the Supreme Court analyzed the "exigent circumstances" or "hot pursuit" issue solely in the context of the statutorily-defective arrest of defendant on the misdemeanor failure to report charge (not the OUI charge). Specifically, the Supreme Court said:

> Here, *defendant was suspected of a 90-day misdemeanor and there was no evidence of that crime that she could destroy.* Indeed, all the elements of the crime were already known to the police. There is no suggestion that any emergency existed that would have entitled the police to enter defendant's home throughout the conversation up to the point when defendant reached out to retrieve her identification. We fail to see how defendant's interaction at the doorway created any kind of emergency, let alone one that would outweigh her expectation of privacy in her home. [*Hammerlund*, 504 Mich at 461 (emphasis added)].

Had the Supreme Court analyzed the issue in the context of the OUI charge, then it would have had to consider, for example, whether the dissipation over time of defendant's blood alcohol content, among other factors, would constitute exigent circumstances justifying the officer's entry into defendant's home to effectuate the arrest on the OUI charge. As the Supreme Court dissent stated:

> The majority suggests that Officer Staman could not rely on the "hot pursuit" exception to the warrant requirement partly because there was no evidence that defendant could destroy; although it is worth noting that evidence in the form of defendant's measurable blood alcohol level would dissipate over time. Regardless, preventing the destruction of evidence is only *one* consideration in an analysis of exigent circumstances. See *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990). In *Olson*, the United States Supreme Court stated:
>
>> The Minnesota Supreme Court applied essentially the correct standard in determining whether exigent circumstances existed. The court observed that "a warrantless intrusion may be justified by hot pursuit of a fleeing felon, *or* imminent destruction of evidence . . . , *or* the need to prevent a suspect's escape, *or* the risk of danger to the police or to other persons inside or outside the dwelling." [*Id*.,

> quoting *State v. Olson*, 436 N.W.2d 92, 97 (Minn., 1989) (emphasis added; citation omitted).]

Thus, while the arrest may not have been valid solely on the basis of an attempt to preserve evidence, entry into defendant's home was necessary to prevent the circumvention of a constitutionally proper arrest, which was initiated from a position outside the protected area inside the home. [*Hammerlund*, 504 Mich at 481 n 59 (ZAHRA, J., dissenting)].

So, why does all of this matter? Because in reaching a conclusion on ultimate issues that had never been decided by any lower court, and by reaching that conclusion without the development of an adequate factual record and while skipping important parts of the legal analysis, the Supreme Court put the cart before the horse, reached issues not raised by the parties or developed in the briefing, constrained the lower trial court from performing its proper role to develop the factual record and to decide issues in the first instance, and constrained this Court from considering and deciding the issue on appeal.[11] Instead, the Supreme Court decided the issue in the first instance, with the lower courts then being bound to follow the conclusion of the Supreme Court, notwithstanding the fact that in my judgment the Supreme Court should not have reached or decided the issue in the first place at that stage of the proceedings.[12]

All of this becomes painfully evident when one reviews the record of what transpired following the Supreme Court's remand of this matter to the trial court. By opinion and order dated April 14, 2020 (O&O 4/14/20), the trial court, on remand from the Supreme Court, granted defendant's motion to suppress and for a new trial. It set the stage for its analysis by highlighting the Supreme Court's above-quoted footnote 5, noting:

> Additionally, *although this Court never directly addressed the issue, part of the Michigan Supreme Court majority's analysis was based on the conclusion that the initial arrest could only have been for the 90-day misdemeanor failure to report offense* because "the facts that were known to Officer Staman at the time of the arrest were not sufficient to establish probable cause for OWI or any other identified

---

[11] Yet, the Supreme Court routinely declines to decide issues in the first instance, and instead remands matters to the lower courts in deference to their proper role in developing a factual record and in deciding issues in the first instance for review by the Supreme Court at an appropriate later time. See e.g., *People v Hickey*, 504 Mich 975; 933 NW2d 311 (2019); *People v Sheena*, 497 Mich 1021; 862 NW2d 648 (2015).

[12] In its July 23, 2019 opinion, the Supreme Court noted that "[w]hether suppression of evidence under the exclusionary rule is appropriate is an issue separate from whether defendant's Fourth Amendment rights where violated by police conduct." [*Hammerlund*, 504 Mich at 463 (emphasis added)]. It therefore remanded this case to the trial court to consider that issue. In my judgment, it should have included within the scope of that remand the issues that I have discussed in this opinion, rather than deciding those issues in the first instance and then constraining the trial court (and this Court) in the further proceedings on remand.

felony." *Id*. at 453 n 5. [O&O 4/14/20 at 3 (emphasis added) (quoting *Hammerlund*, 504 Mich at 453 n 5)].

The trial court further reiterated that "*Again, based on the holding of the Michigan Supreme Court, the illegality in this case was entry into defendant's home to arrest defendant for the 90-day misdemeanor offense* for failure to report the accident." *Id*. at 7 (emphasis added). In a lengthy footnote, the trial court explained:

> *As mentioned above, this Court had never decided the issue of whether there was probable cause to believe defendant committed any crime other than the 90-day misdemeanor* for failing to report an accident causing damage to fixtures. Rather, it was decided that, even assuming the arrest was only justified by the failure to report, it did not make the actions unconstitutional. *Still, the Michigan Supreme Court majority did explicitly rule that failing to report was the only legal justification for the arrest. See Hammerlund, 504 Mich at 453 n 5.* The minor nature of the crime was referenced multiple times in the opinion as part of the analysis and not as mere dicta, so *this Court is bound by this conclusion.* See, e.g., *id*. at 461 (discussing the minor nature of the failing to-report crime in relation to potential exigent circumstances). *However, respectfully, this Court notes that if it had been directly faced with the issue, the combination of facts known by Officer Staman at the time of the arrest (e.g., the accident, the abandoned vehicle facing the wrong way on a highway offramp, the late hour, defendant's decision to just get a ride home and abandon her car for the night rather than report the accident, defendant's slurred speech, and defendant's difficulty balancing) would have likely led this Court to conclude there was at least also probable cause for the crime of operating while intoxicated in violation of MCL 257.625.* See *Devenpeck v Alford*, 543 US 146 (2004) (holding probable cause analysis related to an arrest is based on an objective analysis of the facts known to the officer at the time of an arrest, not the subjective intent of the officer). Even assuming Officer Staman did not know at the time about defendant's other convictions that made this violation a felony, it is still at least a 93-day misdemeanor, it involves different evidentiary and investigatory issues, and it implicates much more serious public safety concerns than merely failing to report an accident causing damage to fixtures. *Regardless, given the Michigan Supreme Court majority's clear holding that Officer Staman only had probable cause for the failure to report offense, this Court need not address whether or how probable cause related to operating while intoxicated might affect the application of the exclusionary rule.* [*Id*. at 7, n 3 (emphasis added)].

In concluding its opinion on remand, the trial court emphasized yet again the constraints that it felt as a result of the Supreme Court deciding an issue that the trial court itself had never addressed:

> *It should be remembered that the ruling today is based on the Michigan Supreme Court majority's conclusion that this case involves "a person suspected of a minor misdemeanor* [being] subjected to a warrantless arrest inside her home in the middle of the night." *Hammerlund*, 504 Mich at 459-460. *The arrest was held to have been unreasonable and solely based on the offense for failure to report the accident.*

*Id. It was also held that there was no exigency to justify the timing and location of the arrest, at least in part because all the elements of that crime were already known to police at the time of the arrest and there was no evidence of that crime that could be destroyed. Id. at 461-462. In light of those holdings, this Court finds application of the exclusionary rule to be required to protect the constitutional interests at stake.* [Id. at 9-10 (emphasis added; footnote omitted)].

For good measure, the trial court added the following additional footnote:

*Again, to be clear, this Court expresses no opinion as to whether or how the existence of probable cause at the time of the arrest related to the offense of operating while intoxicated would impact this result. (See note 3 above.)* [*Id.* at 10, n 6 (emphasis added)].

One need not read very far between the lines to appreciate the extent to which the trial court felt that the Supreme Court had usurped the trial court's proper role as the fact-finder and as the court whose job it is to apply the facts in deciding legal issues in the first instance. The trial court further clearly expressed that it, as the fact-finder and initial decision-maker, likely would have decided the issue differently than the Supreme Court did, but that it was constrained from even reaching the issue because the Supreme Court had stepped in to decide it first. By rushing to judgment on that issue, the Supreme Court effectively dictated the result in the trial court and altered the posture of the case on further appeal. With respect to our Supreme Court, that is not how our judicial system is supposed to work.

So now, here we are again in the Court of Appeals. And here we are passing upon an outcome in the trial court that appears to be quite different from the outcome that the trial court would have reached had it properly been allowed to decide the issue in the first instance. Instead, we are reviewing a decision of the trial court that the trial court felt was dictated by the Supreme Court (even though it was contrary to what the trial court likely would have otherwise ruled). And this Court, unsurprisingly, feels equally constrained by the Supreme Court's ruling. As the majority states, "We are bound by our Supreme Court's determination that 'the facts that were known to Officer Staman at the time of the arrest were not sufficient to establish probable cause for OWI or any other identified felony.' *Hammerlund*, 504 Mich at 453 n 5."

If this is indeed how our system of justice is going to operate, then one might fairly wonder why we don't simply skip the fact-finding and initial decision-making that by design take place in the trial courts of this state, and the deliberations that subsequently occur in this Court on an initial appeal, and instead simply "Advance to Go" in the Supreme Court.

For these reasons, I respectfully dissent.

/s/ Mark T. Boonstra