[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11884

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KEANO DONALD ALTIERI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cr-60182-RS-1

_____

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Keano Donald Altieri appeals his conviction for possessing a postal service key, in violation of 18 U.S.C. § 1704, and possessing stolen mail, in violation of U.S.C. § 1708. Mr. Altieri argues that the district court erred by denying his motion to suppress the postal key and stolen mail evidence seized after police arrested him for prowling, in violation of Florida Statute § 856.021 ("the prowling statute").[1]

---

[1] The statute reads as follows: "(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. (2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern. (3) Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083."

**I**

On March 28, 2022, at approximately 1:25 a.m., Officer Shannon noticed a car parked on Nova Drive, alongside a college, in Davie, Florida. Two males exited the vehicle dressed in all black and wearing black masks. Mr. Altieri—one of the two men—carried a plastic garbage bag and at least one of the two wore latex gloves. The two began to run across Nova Drive—toward a row of warehouses—but before they could complete the crossing, Officer Shannon intercepted them in his marked vehicle.

Officer Shannon exited his car, identified himself as police, drew his gun, and commanded the men to the ground. The two men stopped and complied. Officer Shannon handcuffed both and took them into custody. While searching the men, Officer Shannon found unopened mail in the garbage bag that Mr. Altieri was carrying and a postal service key on his person.

In August of 2022, a grand jury returned an indictment charging Mr. Altieri with possession of a postal service key, in violation of 18 U.S.C. § 1704, and with possession of stolen mail, in violation of U.S.C. § 1708.

Mr. Altieri moved to suppress evidence of the postal service key and the stolen mail seized after his arrest. In his motion, Mr. Altieri argued that Officer Shannon lacked probable cause to arrest him for violating the prowling statute. Mr. Altieri asserted that because he had not fled, refused to identify himself, or attempted to conceal himself, the government could not satisfy the statute's prima facie elements. Mr. Altieri also maintained that Florida

courts had found probable cause lacking in "much more suspicious" circumstances and that his act of running across a street at 1:25 a.m. should not have alarmed Officer Shannon because Nova Drive was a busy intersection with 24-hour businesses and bus stops. *See* D.E. 12 at 6.

In response, the government argued that probable cause was not lacking. As support, the government pointed out that both men wore gloves and hooded shirts; both men pulled masks over their faces before crossing Nova Drive; both men refused to answer when asked to explain their conduct; and the car that had driven Mr. Altieri and the other suspect to the scene fled when the police officer approached. The government argued that Officer Shannon thus had probable cause to arrest Mr. Altieri for prowling because the two men were engaged in suspicious conduct and had failed to quell Officer Shannon's concerns when given the opportunity.

The magistrate judge to whom the case was referred found that Officer Shannon had probable cause to arrest Mr. Altieri because the circumstances leading up to the arrest, when "viewed from the standpoint of an objectively reasonable police officer," supported the conclusion that he was "loitering or prowling in a place and at a time and manner not usual for law-abiding citizens." D.E. 19. at 6. The magistrate judge also concluded that the cases cited by Mr. Altieri were "factually distinguishable" from the circumstances in the case at hand. *See id*. at 6. Accordingly, the magistrate judge concluded that Officer Shannon "had reasonable alarm or immediate concern for the persons and property in the

area" and that after Mr. Altieri failed to dispel this concern, the officer had probable cause to arrest him. *Id.*

The district court adopted the magistrate judge's report and recommendation and denied Mr. Altieri's suppression motion. Mr. Altieri pled guilty to both counts pursuant to a conditional plea agreement and timely appealed to this Court.

## II

We review a district court's denial of a motion to suppress evidence under a mixed standard, reviewing the court's factual findings for clear error and the application of the law to those facts *de novo*. *See United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). The district court's factual findings are construed in the light most favorable to the prevailing party. *See id.*

The Fourth Amendment protects against unreasonable searches and seizures. *See* U.S. Const. amend. IV. Under the exclusionary rule, evidence generally cannot be used against a defendant in a criminal trial where that evidence was obtained via an encounter with police that violated the Fourth Amendment. *See United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). But, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.*

We have interpreted Florida Statute § 856.021 as having two elements: "(1) the accused must be loitering or prowling at a place, at a time, or in a manner not usual for law-abiding citizens; and (2) the loitering or prowling must be under circumstances that warrant a reasonable fear for the safety of persons or property in the vicinity." *United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000). These are some elements set out by the Florida courts. *See, e.g.*, *P.R. v. State*, 97 So. 3d 980, 982 (Fla. 4th DCA 2012).

The statute lists several factors that may create the reasonable fear necessary for arrest, stating that reasonable fear is warranted if "the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object." Fla. Stat. § 856.021(2). The statute further provides that "a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct." *Id.*

Probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018) (internal quotation marks and citation omitted). Here the district court did not err by denying the motion to suppress the postal service key and stolen mail evidence.

The facts, known to Officer Shannon at the time of the arrest, based on his personal observations, *see P.R.*, 97 So. 3d at 982–93, establish that there was probable cause to believe that a criminal offense had been or was being committed. *See Devenpeck*, 543 U.S. at 152. The facts establish that (1) Mr. Altieri and another male existed a vehicle at 1:25 a.m.; (2) that both men were wearing black clothing and masks; (3) that Mr. Altieri was carrying a plastic garbage bag; (4) that at least one of the two men was wearing gloves; (5) that the car which drove the two men to the scene fled when Officer Shannon confronted Mr. Altieri; and (6) that Mr. Altieri refused to communicate with Officer Shannon when asked to explain his conduct.

### III

In sum, probable cause existed for Officer Shannon to conclude that Mr. Altieri was "loitering or prowling at a place, at a time, or in a manner not usual for law-abiding citizens," and that there was "reasonable fear for the safety of persons or property in the vicinity." *See* Fla. Stat. § 856.021(2). The district court correctly denied Mr. Altieri's motion to suppress.

**AFFIRMED.**